**AUTOMATED DATATRON, INC.,**
**Plaintiff Counter-Defendant,**

v.

**Kenneth H. WOODCOCK, Defendant Counter-Plaintiff.**

**Civ. A. No. 78–2096.**

United States District Court,
District of Columbia.

Dec. 4, 1979.

Amy Robertson Goldson, Washington, D. C., for plaintiff counter-defendant.

John Edward Powell, W. Earl Kidwell, Jr., Rockville, Md., for defendant counter-plaintiff.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

The parties to the instant action are before the Court pursuant to various motions involving the amended counterclaim of defendant Kenneth H. Woodcock. Among the motions pending is that of defendant requesting that he be granted summary judgment on his amended counterclaim as well as those of plaintiff Automated Datatron, Inc., (ADI) seeking the dismissal of the amended counterclaim either because it fails to state a claim upon which relief can be granted or because the joinder of a supposed indispensible party required to properly litigate the amended counterclaim would destroy the diversity of citizenship upon which the subject matter jurisdiction of the Court rests. Although plaintiff has not yet answered either the amended counterclaim or the defendant's motion for summary judgment, the Court nonetheless will treat its motions to dismiss in the context of defendant's motion for summary judgment and consider not only the pleadings but those depositions taken by the parties and filed with the Court to determine if there is any genuine issue as to any material fact so that either party is entitled to judgment as a matter of law.

This suit was instituted on November 3, 1978, by plaintiff ADI, a District of Columbia corporation with its principal place of business in the District of Columbia, to redress what it alleges were breaches of the fiduciary duty owed the firm by defendant Woodcock, a former employee. The alleged violations of his responsibility to ADI include fraudulent diversion of corporate customers and his use of corporate assets to benefit his own business. Defendant Woodcock, a citizen of Maryland, submitted an answer on December 6, 1978, in which he denied the allegations of the complaint and asserted a counterclaim, subsequently amended as to matters not relevant here, in which he claimed monies from ADI owed to him on the basis of an alleged "Stock Agreement" signed by Charles E. Marks, a citizen of Maryland and the sole shareholder and president of ADI, and himself. In pertinent part that agreement provides:

> I, Charles E. Marks, . . . being the sole owner and stockholder of Automated Datatron, Inc., . . . do hereby assign twenty percent (20%) of the outstanding stock of said Corporation to Kenneth H. Woodcock . . . .
>
> In return for said twenty percent (20%) of the outstanding stock, Kenneth H. Woodcock shall perform as Vice-President, Operations, shall act solely in the interest of Automated Datatron, Inc., and shall to the best of his ability, work to assure an annual growth in the profits of said corporation.
>
> FURTHER, this twenty percent (20%) of said stock is assigned to Kenneth H. Woodcock as an individual and shall not be transferred, sold or traded to any existing and/or nonexisting person, company, partnership, or corporation.
>
> FURTHER, in the event Kenneth H. Woodcock's services with Automated Datatron, Inc. are concluded, either by separate or mutual decision, said stock shall become the property of Automated Datatron, Inc. for value determined at time of conclusion.

On September 28, 1979, defendant filed a motion for summary judgment, and an accompanying memorandum of points and authorities, with regard to his amended counterclaim. On October 5, 1979, plaintiff ADI filed a motion to dismiss by which it alleged that the counterclaim fails to state a claim upon which relief can be granted in that the stock agreement constitutes a corporate attempt to issue stock as payment for future services, an action without effect under D.C.Code § 29–908d (1973). In his response to this motion to dismiss, defendant agreed that such an issuance would be void, but asserted that the instant agreement was merely the assignment of stock from one

individual, Charles Marks, to another, Kenneth Woodcock, rather than an issuance of stock by a corporation prohibited by section 29–908d. Plaintiff's reply to this assertion was another motion to dismiss, filed November 1, 1979, in which it charged that Charles Marks is an indispensible party to the litigation of this counterclaim, but that his presence would destroy diversity of citizenship, the jurisdictional basis upon which defendant's amended counterclaim had to be grounded since it was permissive, thereby requiring dismissal of the amended counterclaim. Defendant has contested these assertions, arguing that Marks is only a necessary party who need not be joined and that, in any event, the counterclaim is compulsory rather than permissive and thus does not need an independent jurisdictional basis in order to be litigated in this action.

■ Addressing initially the questions raised by plaintiff's first motion to dismiss, it is apparent to the Court that the stock agreement was one between Charles Marks, in his individual capacity, and the defendant and thus was not void or voidable under section 29–908d of the District of Columbia

Code.[1] It is quite clear that Charles Marks was the owner of all the shares of stock issued by ADI at the time the agreement was signed by him, Deposition of Charles E. Marks 10–11, 96 (filed July 26, 1979), those shares constituting the "outstanding stock" of the corporation, *cf. United States v. Parker*, 376 F.2d 402, 406–07 (5th Cir. 1967); *Kansas, O. & G. Railroad v. Helvering*, 124 F.2d 460, 463–64 (3d Cir. 1941). Thus, the purported transfer in this instance was not the issuance of stock by the corporation to defendant in payment for his future services, but rather an assignment of those shares of stock already issued to and owned by an individual, a transaction section 29–908d was not designed to prohibit.[2] ADI's motion to dismiss for failure to state a claim upon which relief can be granted must be denied.

■ Despite this conclusion, there nonetheless remains the question as to where defendant is to look for a recovery if the alleged stock agreement is indeed valid and binding. The agreement itself states that "in the event Kenneth H. Woodcock's services with Automated Datatron, Inc. are con-

---

1. While the stock agreement itself, apparently the work-product of a nonlawyer officer of the corporation, Deposition of Carolyn C. Hodges 15–16 (filed Nov. 5, 1979), is not a totally unambiguous document, it is sufficiently clear as to those aspects important to a determination of the questions raised in plaintiff's motions to dismiss such that a reasonable man could reach only one conclusion as to its meaning, thereby making its contents, at least in relevant part, susceptible to judicial interpretation as a matter of law. *See Giles v. Howard University*, 428 F.Supp. 603, 605 (D.D.C.1977).

2. In pertinent part section 29–908d provides:
   (a) The consideration for the issuance of shares may be paid, in whole or in part, in money, in other property, tangible or intangible, or in labor or services actually performed for the corporation. . . ..
   (b) Neither promissory notes nor future services shall constitute payment or part payment for shares of a corporation.
   (c) In the absence of fraud in the transaction, the judgment of the board of directors or the shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.
   This provision is very similar to section 19 of the Model Business Corporation Act after which it is modeled. 1 American Bar Founda-

tion, *Model Bus. Corp. Act Annot.* § 19, ¶ 3.02, at 436 (2d ed. 1971); *see* S.Rep.No. 516, 83d Cong., 1st Sess. 5 (1953); H.R.Rep.No. 198, 83d Cong., 1st Sess. 2 (1953). While read in isolation subsection (b) of section 29–908d is somewhat ambiguous in that it might appear to prohibit all transfers of stock for future services, when considered in conjunction with subsections (a) and (c), which both speak of the issuance of shares by the corporation, as well as with the underlying purpose served by its prohibition——the avoidance of "watered stock," *see* 1 American Bar Foundation, *supra*, § 19, ¶ 2, at 435–36—it is clear that the section should be applied only to corporate issuances.
   In so stating, it is important to note that while the Court would not hesitate to apply section 29–908d's prohibition in any instance when it appeared that a corporation, closely held or otherwise, was seeking to avoid the statute's stricture by the passage of watered stock through an individual rather than its issuance by the corporation, there has been no evidence put forth by either party that the sale of all the issued stock of ADI to Charles Marks at the inception of the corporation was for less than adequate consideration.

cluded . . . said stock shall become the property of Automated Datatron, Inc. for value determined at time of conclusion," thereby indicating that the stock is to revert not to its previous owner, Charles Marks, but to the corporation that originally issued it, which, in turn, is to pay defendant its value. Whether this somewhat unusual arrangement was indeed what the parties intended is not an issue that can be resolved at this time, but it certainly does not remove the possibility of Charles Marks' personal· liability under the agreement, either under a theory of piercing the corporate veil or because of a lack of formal assent by ADI to assume the obligation Charles Marks' personal agreement would place upon it.[3]

■ Having so stated, it is apparent that, as plaintiff has contended, Charles Marks is indeed indispensible, being a party in whose "absence complete relief cannot be accorded among those already parties," Fed.R.Civ.P. 19(a), and thus should be joined in this action as a defendant to the amended counterclaim if his "joinder will not deprive the court of jurisdiction over the subject matter," id. See Ward v. Deavers, 92 U.S.App. D.C. 167, 170, 203 F.2d 72, 75 (1953). See generally 3A Moore's Federal Practice ¶ 19.-07–1[2], at 122–28 (2d ed. 1979); 7 C. Wright & A. Miller, Federal Practice and Procedure § 1604, at 36–38 (1971).

■ As both parties agree, the answer to this issue of joinder turns on whether the counterclaim is considered to be compulsory under Federal Rule of Civil Procedure 13(a), or permissive under subsection (b) of Rule 13. This is so because if it is the former it is not required that the counterclaim have an independent jurisdictional basis, which cannot exist in this case as both Charles Marks and defendant Woodcock are citizens of Maryland. See 3 Moore's Federal Practice, supra, ¶ 13.15[1], at 379–83; 6 C. Wright & A. Miller, supra, § 1414, at 69–80.

By the terms of Rule 13(a), a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." It is fair to say that in this instance the subject matter of plaintiff ADI's complaint relates to a "transaction," that is, the employment relationship of defendant Woodcock with plaintiff, rather than simply an occurrence. In defining the exact parameters of that term the United States Court of Appeals for the District of Columbia Circuit has noted:

> The Supreme Court has given the term "transaction" a broad definition:
>
> > "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. . . . Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter. To hold otherwise would be to rob this branch of the rule of all ˙serviceable meaning, since the facts relied upon by

3. If liability for the purported stock agreement ultimately was determined to fall solely upon Charles Marks in his individual capacity, it might then be argued that the counterclaim against him was improperly litigated in this action since he was not an "opposing party," within the meaning of Federal Rule of Civil Procedure 13, who instituted this action and against whom a counterclaim could be brought. In determining who is an opposing party subject to a counterclaim, it has been recognized that "the rule makes no mention of the word 'capacity', the important consideration being that the parties are real opponents in litigation." Berger v. Reynolds Metals Co., 39 F.R.D. 313, 315 (E.D.Pa.1966). While ADI, of

which Charles Marks is sole shareholder and owner, instituted this suit and is nominally the only "opposing party" against whom a counterclaim can be brought, the close relationship between Marks and the corporation compels the Court to recognize him, in his individual capacity, as an opposing party against whom the amended counterclaim can be sustained. See Establissement Tomis v. Shearson Hayden Stone, Inc., 459 F.Supp. 1355, 1364–65 (S.D.N. Y.1978); Scott v. United States, 354 F.2d 292, 297–301, 173 Ct.Cl. 650 (1965); cf. Berger v. Reynolds Metals Co., supra, 39 F.R.D. at 314–. 15; Burg v. Horn, 37 F.R.D. 562, 563–64 (E.D. N.Y.1965).

the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim. [*Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926).]

Consequently, in determining whether the  .  .  .  subject matter [of the second claim] is properly a compulsory counterclaim in the [initial] suit, we must assess the degree of "logical relationship" between the two actions. We must also remain mindful that the term "transaction" is to be construed generously to avoid the unnecessary expense inherent in multiplicious litigation.

*Columbia Plaza Corp. v. Security National Bank,* 173 U.S.App.D.C. 403, 408, 525 F.2d 620, 625 (1975) (footnotes omitted). In other words, a court should attempt "to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir. 1978). *See generally* 3 *Moore's Federal Practice, supra,* ¶ 13.13, at 297–303; 6 C. Wright & A. Miller, *supra,* § 1410, at 46–48.

▌ Such a logical relationship clearly exists between the claim and the counterclaim here. In its complaint, plaintiff has alleged that defendant Woodcock, while an officer and employee of ADI and in violation of his fiduciary duty to the corporation, fraudulently utilized the equipment and employees of ADI to render services to firms with which he had a personal business affiliation, Complaint ¶¶ 10–16, and that the defendant fraudulently induced plaintiff to lend him twenty thousand dollars by putting up his future salary and bonuses as security even though he was simultaneously engaging in activities designed to benefit himself, to the detriment of the corporation, which would obviously cause his termination and the loss of his salary and bonuses, *id.* ¶¶ 18–25. The focal point of plaintiff's claim is thus the employment relationship of ADI and defendant Woodcock and the extent to which the defendant allegedly abused or violated that association. Like-

wise, the essential facts of the amended counterclaim involve the same employer-employee relationship as it pertains to the alleged stock agreement negotiated between the owner of ADI and defendant Woodcock, under which the latter was to perform as vice-president of the corporation, acting solely in its interests, in exchange for an assignment of twenty percent of the outstanding stock of the corporation. The question of the propriety or impropriety of defendant Woodcock's actions as a corporate employee is so intertwined with the claims at issue in both plaintiff's and defendant's actions that "common sense and judicial economy compel the conclusion that such claims should be tried together  .  .  .  ." *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1071 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Accordingly, the amended counterclaim being one that is compulsory, ancillary jurisdiction can be exercised over the amended counterclaim so that the joinder of Charles Marks as a defendant in this litigation will not deprive the Court of subject matter jurisdiction.

▌ Remaining for decision is defendant's motion for summary judgment which, at this time, the Court can only conclude must be denied because there appear to be genuine issues of material fact still in controversy. In plaintiff's answer to the counterclaim, prior to its amendment, ADI raised questions about the adequacy of consideration that may very well be factual. Further, it appears to the Court that the unresolved factual questions about defendant's violation of the employer-employee relationship will impact upon any possible issue concerning the extent to which there has been a material breach of the stock agreement that would relieve plaintiff or its owner of the necessity of abiding by the terms of the compact. In denying defendant's motion for summary judgment, however, the Court does so without prejudice to its later renewal within certain time limits to be specified by the Court. Further, it should be pointed out that in filing any further summary judgment motions, coun-

sel should be careful to fully comply with Rule 1–9(g) of the Rules of the United States District Court for the District of Columbia.

Finally, the Court is aware of the October 1, 1979, motion of plaintiff's attorneys, the firm of Smothers and Douple, to withdraw because a member of the firm may be called to testify if the counterclaim is to be litigated in this action. In light of the Court's ruling on the pending motions, the motion of Smothers and Douple must now be given serious consideration. Because of this, it is apparent that the trial in this action, scheduled to begin December 10, 1979, will have to be postponed. On that date, however, the Court will hold a hearing as to the motion of Smothers and Douple, as well as to schedule new dates for a pretrial conference and for trial. At that hearing, the Court would request that an officer of plaintiff corporation responsible for overseeing the conduct of this litigation be present.