**FREDERICK COUNTY FRUIT GROWERS ASSOCIATION, INC., et al., Plaintiffs,**

v.

**Elizabeth DOLE, Secretary of Labor, et al., Defendants,**

and

**Cedrick Turner, et al., Defendants–Intervenors.**

Civ. A. No. 87–1588.

United States District Court, District of Columbia.

March 20, 1989.

---

Thomas E. Wilson, Marc Alan Silverstein, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., W.A. Johnston, Ronald J. Brown, Harrison & Johnston, Winchester, Va., for plaintiffs.

Sandra Schraibman, Judry Subar, U.S. Dept. of Justice, Civ. Div., for defendants.

Roger Rosenthal, Edward J. Tuddenham, Migrant Legal Action Program, Washington, D.C., Garry G. Geffert, West Virginia

Legal Services, Martinsburg, West Virginia, Gregory S. Schell, Legal Aid Bureau, Inc., Salisbury, Md., Michael Guare, Pine Tree Legal Assistance, Bangor, Me., for defendants-intervenors.

## ORDER

CHARLES R. RICHEY, District Judge.

The defendant-intervenors (hereinafter the "Farmworkers") have moved under Fed.R.Civ.P. 59(e) to amend the judgment of the Court in the above-captioned matter, as announced in an Order and Opinion issued on January 17, 1989.

The Court's judgment awards the Farmworkers back wages for the years 1983 and 1985 against the plaintiffs (hereinafter the "Growers").[1] The Farmworkers now ask for modification or clarification of that judgment in several respects. The Court addresses each of the Farmworkers' requests in turn.

### 1. *The Appropriate Grower Class*

■ The Farmworkers first ask that the Court modify its determination as to the class of Growers who shall be immediately liable for back wages. In its earlier judgment, the Court held that, for the time being, the Grower class shall include only (1) the named plaintiff associations and individual growers, and (2) the members of the named plaintiff associations in 1985 who paid the unlawful piece rates in 1985. The Court deferred a decision as to whether the 1985 members of the plaintiff associations who paid unlawful rates in 1983 should be certified as members of a class. The Farmworkers ask that the class certified in the earlier judgment be expanded to include these individuals.

Preliminarily, the Court understands the Farmworkers to suggest that the Court misunderstood the parties' April 4, 1988, stipulation regarding the scope of the Grower class. The Farmworkers contend that the Court misconstrued the terms of the stipulation by treating the 1983 back wage claims as involving a class of growers separate from that contemplated by the 1985 claims. The Farmworkers point to the terms of the stipulation, which contemplate a single class, albeit one whose scope is disputed.

The Court rejects the Farmworkers' suggestion. The Court fully understood, and understands, what the parties stipulated to on April 4, 1988. The Farmworkers' point is essentially semantic, and without analytical significance—regardless of whether the issue is framed in terms of a single class or separate classes, the core question is whether the 1985 members of the plaintiff associations, who paid the lawful rates in 1985, but unlawful rates in 1983, shall be deemed part of *any* class. Whether these growers should constitute a separate class, or whether the class already certified should be extended to include them, is analytically irrelevant. The Court adopted the former approach for the eminently practical reason stated in its Opinion of January 17, 1989—because of the current ambiguity surrounding the propriety of certifying a defendant class under Fed.R. Civ.P. 23(b)(2).[2]

What we are left with, then, is *not* an erroneous interpretation of the April 4, 1988, stipulation. Rather, we are left with the more direct question of whether the Court acted properly in deferring a decision as to the 1983 claims. The Farmworkers' suggestion that the Court misconstrued the stipulation is, in substance, no more than an circuitous means of resurrecting the arguments that the Farmworkers raised in their initial briefing on the question. Put directly, the question the Farmworkers pose is whether the growers, who were

---

1. For a detailed description of the issues raised and decided in that decision, see *Frederick County Fruit Growers Ass'n, Inc. v. McGlaughlin,* 703 F.Supp. 1021 (D.C.D.C.1989) (Richey, J.).

2. As noted in the Opinion, the Court took a "middle course." Because the parties had agreed that the growers who paid the unlawful

rates in 1985 should be members of the class, the Court decided to give effect to that agreement. However, because of the legal uncertainty as to the certifiability of a defendant class under Fed.R.Civ.P. 23(b)(2), the Court decided that the most prudent course might be to defer a decision on that question.

members of the plaintiff associations in 1985, but who paid the unlawful rates in 1983 (whether or not they also did so in 1985), should be certified as members of a class.

Upon further reflection, the Court concludes that its earlier decision suffered from an excess of caution as to the certifiability of a defendant class under Fed.R.C.P. 23(b)(2). Although there is certainly a live issue, it appears that the decision in *Henson v. East Lincoln Township*, 814 F.2d 410 (7th Cir.), *cert. granted* — U.S. —, 108 S.Ct. 283, 98 L.Ed.2d 244 (1987), relied upon in the earlier decision, has been given little precedential weight outside the Seventh Circuit. It further appears that the Supreme Court, for whatever reason, has deferred all proceedings in the matter at that level. — U.S. —, 108 S.Ct. 1009, 98 L.Ed.2d 975. The ambiguity noted in the earlier decision thus continues, but, as the Farmworkers note, it continues without the prospect of impending clarification by the Supreme Court.

Thus, there being no good reason to defer a decision, the Court turns to the merits. The Court holds that the class of defendant growers certified on January 17, 1989, should not be extended to include those 1985 members of the plaintiff associations who paid lawful rates in 1985, but who paid unlawful piece rates in 1983.[3] For the reasons discussed below, those growers shall not be liable to the Farmworkers in this action.

The parties suggest that the dispositive issue is whether the plaintiff associations originally brought this action on behalf of all of their members, or whether they merely brought the action on behalf of those grower members who paid the unlawful rates in 1985 alone. The Growers contend that the latter is true, and, for that reason, they have stipulated to the existence of such a class. The Farmworkers argue that the former is true, and therefore seek certification of a class that is coextensive with the group which they regard as having initiated the lawsuit.

The Court is inclined to agree with the Growers; the undisputed facts suggest that this action was initiated in the fall of 1985, not on behalf of all of the plaintiff associations' members, but only on behalf of those members who intended to pay the unlawful rates during the 1985 harvest.[4] Yet, while the Court regards this fact as significant, it does not regard it as dispositive of the issue. Instead, the Court ultimately rests its conclusion upon a construction of Rule 13 of the Federal Rules of Civil Procedure. The Court's reading of Rule 13 suggests that it would be unwise to extend the scope of the defendant class beyond that expressly accepted by the Growers in the stipulation of April 4, 1988.

Rule 13 requires that any counterclaim, whether compulsory or permissive, be lodged against an "opposing party." Here, technically speaking, the plaintiff "parties" at the time the Farmworkers lodged their counterclaims were *only* the associations and several individual growers.[5] What the

---

3. The resolution of the outstanding class certification issue would appear to render this action susceptible of appeal as a "final judgment" under 28 U.S.C. § 1291. *Bieneman v. City of Chicago*, 838 F.2d 962 (7th Cir.1988) (outstanding class certification issue). The class certification issue aside, however, the time for appeal under Fed.R.App.P. 4(a)(4) does not begin to run until the date of this Order because the Farmworkers have moved, *inter alia*, for an award of prejudgment interest (discussed below). *Osterneck v. Ernst & Whinney*, — U.S. —, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). Accordingly, it would seem that the notice of appeal filed by the Growers on January 23, 1989, is without effect.

4. It appears that Judge Kiser, before whom the suit initially lay in the Western District of Virginia, shared this view. His escrow order ran only against those growers who paid the unlawful rates in 1985. Pursuant to that escrow order, those growers have placed into escrow approximately $1.25 million in unpaid back wages for 1985.

5. An argument might have been made, but was not, that even though the members of the plaintiff associations were not *technically* parties—in the sense that their names were not on the complaint—they were parties in interest insofar as the associations purported to be acting on their behalf. *See, e.g., Automated Datatron, Inc. v. Woodcock*, 84 F.R.D. 408, 412 n. 3 (D.D.C. 1979) (Green, J.) ("close relationship," such as sole shareholder of plaintiff corporation, may cause one to become subject to counterclaim). Such an argument, if accepted, would have ob-

Farmworkers seek is the certification a defendant class—a group of new "parties" within the meaning of Rule 13—against which they may assert their counterclaims.

Under the fairly unique circumstances of this case, the Court is unwilling to hold—absent stipulation by the Growers—that the Farmworkers are entitled to the certification of this new class of Rule 13 "parties." The Court notes the current split of authority as to whether a single defendant may pose counterclaims against individual members of a certified *plaintiff* class. *Compare Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485 (S.D.N.Y. 1973) (counterclaim refused against plaintiff class), *with Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 75 F.R.D. 40 (S.D.N.Y.1977) (counterclaim permitted). *See also*, Wright, Miller & Kane, *Federal Practice and Procedure* § 1404, p. 4 (1988 Supp.) (noting split); H. Newberg, *Newberg on Class Actions* § 4.34 (2d ed. 1985) (generally opposing counterclaims against plaintiff class); Steinman, *The Party Status of Absent Plaintiff Class Members: Vulnerability to Counterclaims*, 69 Geo. L.J. 1171 (1981) (proposing policy-based, case-specific analysis of whether plaintiff class members should be vulnerable to counterclaims). The ambiguity in this context centers upon whether plaintiff class members should be classified as "parties" within the meaning of Rule 13. This concern exists despite the fact that members of the plaintiff class have *initiated* suit and been certified as members of the class.

The facts of this case move one step beyond the problems that courts have encountered in evaluating counterclaims against a plaintiff class. Here, we have a class of defendant-intervenors who, having associated themselves with an ongoing lawsuit brought by several individual plaintiffs, seek relief under Rule 13 against a *newly-created* class of counterclaim defendants. In the Court's view, the concerns which counsel against permitting members of a plaintiff class to be subject to counterclaims—concerns rooted in due process and the proper interpretation of Rule 13 [6]—are qualitatively enhanced under these circumstances, where the counterclaims, to afford the relief they seek, demand the simultaneous *creation* of a defendant class against whom they may be raised. Under these circumstances, the establishment of such a class of counterclaim defendants would push the language of Rule 13, as well as the policies underlying its limitation of counterclaims to "opposing parties," [7] beyond the breaking point.[8]

For this reason, the Court declines to expand the defendant class in this case beyond that agreed upon by the parties in their stipulation of April 4, 1988. The class certified shall include all 1985 members of the plaintiff associations who paid unlawful rates in 1985,[9] but it will not be expanded

---

viated the need for certification of a defendant class or joinder, as from the outset the members would have been deemed "parties" within the contemplation of Rule 13. In this connection, the Farmworkers' efforts to certify or join the members seems an apparent recognition that, as things stood at the time of the counterclaims, the members were *not* parties to the action under Rule 13.

6. *See* H. Newberg, *id.*

7. *See, e.g.,* Steinman, 69 Geo.L.J. at 1184–1211 (evaluating policies of Rule 13 in the class context).

8. Obviously, the Farmworkers would face none of these complications had they sought relief in a separate lawsuit independent of the Growers' initial action against the Department of Labor. Had they done so, they would have been able to seek certification of a defendant class (assuming satisfaction of the requirements of Rule 23)

without concern for the restrictions that are here imposed by Rule 13. However, the Farmworkers did not do so; instead, their decision to participate in this lawsuit as defendant-intervenors carried with it the limitation that any requests for relief against the Growers would take the form of counterclaims, and, thus, would be limited by Rule 13. The Farmworkers' voluntary assumption of Rule 13's limitations explains why the Court is unwilling to treat the Farmworkers counterclaims as simply analogous to independent claims for relief, with the same class concerns that such an action would involve.

9. Those individuals will also be liable for any unlawful payments they may *also* have made in 1983. To the extent the stipulation is ambiguous on this point (and the parties have not yet asserted that it is), the Court construes it to provide that all members who made the unlawful payments in 1985 shall *also* be subject to the

to include any members who made lawful payments in 1985 but unlawful payments in 1983. The Farmworkers' request for amendment of the Court's earlier judgment shall, on this point at least, be denied.[10]

## 2. *Prejudgment Interest*

The Farmworkers have moved for prejudgment interest on the back pay awards for 1983 and 1985. The Court holds that prejudgment interest shall be awarded for both years.

■ As to 1985, the Court need only evaluate the adequacy of the interest accruing on the escrow account established pursuant to Judge Kiser's Order of December 17, 1985. Judge Kiser's Order directed the members of the plaintiff associations to deposit the difference between the lawful and unlawful rates for 1985 into an "interest-bearing" escrow account by January 1, 1986. The parties have not indicated what the interest rates applicable to the escrowed funds have been. For the period preceding the actual deposit, Judge Kiser ordered the growers to calculate interest at the equivalent of a 9% annual rate. Because interest has therefore been accruing on the 1985 back wages since they were unlawfully withheld, the only question is whether the rate of that interest is acceptable to this Court.

The Court finds the 9% annual rate imposed by Judge Kiser for the pre-deposit period to be adequate. Further, the Court finds that whatever rate of interest the escrowed funds have earned from January 1, 1986, to the present is adequate, so long as the net result for the period is the imposition of a rate not less than 9%. To the extent the escrowed funds have earned aggregate interest exceeding a 9% annual rate, the Farmworkers shall be entitled to the excess.

■ Different issues are presented with respect to 1983. Because equitable restitution provides the rationale for the Court's decision as to back wages for 1983, the issue of when interest begins to run on that award lies in the Court's equitable discretion. Notwithstanding this, the Growers argue, in essence, that the rule of this Circuit provides that interest on equitable restitution awards will not begin to run until a court actually *holds* that restitution is in order. The Growers cite the results of *Bebchick v. Washington Metropolitan Transit Comm'n*, 645 F.2d 1086, 1093 (D.C.Cir.1981), and *Democratic Central Committee v. Washington Metropolitan Transit Comm'n*, 842 F.2d 402, 419 (D.C.Cir.1988). In both cases, evaluating the question of interest on awards of equitable restitution, the Court of Appeals held that the date upon which liability became fixed provided the "logical date" from which interest should accrue. *E.g., Democratic Central Committee*, 842 F.2d at 419.

In *Democratic Central Committee*, however, the Court of Appeals also noted that, prior to the date of upon which liability became fixed, the parties were not aware of their misbehavior. *Id.* In the instant case, on the other hand, the very basis of this Court's holding as to 1983 was that the Growers' decisions to pay the unlawful rates were made in knowing violation of this Court's Order of September 8, 1983. *See Frederick County Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F.Supp. 1021, 1029 (D.C.D.C.1989). Under these circumstances, equity suggests that interest should begin to run on the delinquent 1983 back wages from the date those wages were improperly held. Contrary to the Growers' assertions, such a result would in no way be inconsistent with the holdings of *Bebchick* and *Democratic Central Committee*. As the Farmworkers request, the rate of interest applicable to the 1983 back wage awards shall be 9.4%.

---

Farmworkers' counterclaims regarding any unlawful payments those individuals may have made in 1983.

**10.** In their Memorandum in Support of Motion to Amend Judgment, but not in the Motion itself, the Farmworkers "reurge" their previous motion to join all 1985 members of the plaintiff associations as parties under Fed.R.Civ.P. 19. As in its previous Opinion, the Court declines to do so.

### 3. Statutory Damage Awards Under the AWPA

The Farmworkers also ask that statutory damage awards be assessed under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1821, *et seq.*, against those Growers who paid unlawful rates in 1985.[11] They ask that each worker employed in 1985 by any member of the Grower class receive $500 in statutory damages.

■ The Court agrees with the Farmworkers that the prior award in this case—the award of back wages under a contract theory—does not preclude an award of damages under AWPA § 1854(c)(1). The Growers' position—that the express language of § 1854(c)(1) precludes an award of both actual compensation and statutory damages for a violation of the AWPA—ignores the fact that the Court based its initial award, not upon the AWPA, but upon the *contract* that existed between the Growers and the Farmworkers. Thus, even if a plaintiff were forced to elect between "actual compensation" or "statutory damages" in response to an AWPA violation, this Court has yet to award the Farmworkers any damages *for a violation of the AWPA*. At this point, the Court has simply awarded extrastatutory, contractual damages.

■ Further, an award of damages under § 1854(c)(1) lies in this Court's sound discretion, and may be fashioned with an eye toward AWPA's purposes, which are "to promote enforcement of the Act and thereby deter and correct the exploitive practices that have historically plagued the migrant farm labor market." *Beliz v. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1332 (5th Cir.1985).[12] *See also Maldonado v. Lucca*, 636 F.Supp. 621, 624 (D.N.J.1986) ("plaintiffs are entitled to damages for violations of [AWPA] in an amount sufficient to further its purposes"). It seems that "[t]he legislative history of the Act and the decisions interpreting it make clear that the purpose of this civil remedy is not restricted to compensation of individual plaintiffs." *Beliz* at 1332. This being the case, the Court's award of contract damages for 1985 does not preclude an additional award of statutory damages under § 1854(c)(1) of the AWPA.

■ What has been said, however, does not mean that the Court *must* make such an award. As the *Beliz* court noted, a factor that the Court should consider in exercising its discretion is the extent to which a party's recovery on "closely related" claims provides complete compensation. *Id.* at 1333. *See also Frenel v. The Freezeland Co., Inc.*, 87–278–A, slip op. at 8, 1987 WL 46894 (E.D.Va. Dec. 24, 1987). Here, in the Court's view, even if an AWPA violation were proved, the Farmworkers' recovery on their contract claim for 1985 provides adequate compensation for the harms that have been established.[13] Moreover, the additional deterrent effect of an AWPA award, particularly when the

---

11. Section 1854(c)(1) of the AWPA provides in pertinent part as follows:

   If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief....

12. *Beliz* was actually decided under the Farm Labor Contractor Registration Act of 1963 (the "FLCRA"). However, the AWPA superseded the FLCRA, and contains a damages provision that is nearly identical to that contained in the FLCRA. Both parties, as well as the courts, seem to agree that the damages analysis developed under the FLCRA is applicable without limitation to the AWPA.

13. The Farmworkers suggest that they suffered wage deflation in years subsequent to 1985 by virtue of the Growers alleged AWPA violations, and that the contract award therefore does not provide complete compensation. The Court rejects this argument for lack of evidence that such deflation actually occurred. Further, it has not been shown, nor could it likely be shown, that the class to whom the statutory damages would be paid in this action is completely coterminous with the class of migrant farmworkers who received the allegedly deflated wages in subsequent years. Thus, it seems possible that, under the Farmworkers' theory, the Farmworkers would be compensated to some extent for harms that they themselves may not have actually suffered.

size of the contract damages are considered, would appear to be marginal. The Court thus exercises its discretion against an award of statutory damages under the AWPA in light of the relief already awarded in this action.

### 4. *Order Under Local Rule 215*

The Farmworkers ask the Court, upon the authority of Local Rule 215, to direct the parties to confer for the purpose of discussing the Farmworkers' request for attorney's fees and costs. Local Rule 215 authorizes the Court, upon the entry of final judgment, to order the parties to "confer and and to attempt to reach agreement on fee issues." The Growers oppose this request, contending that the Farmworkers are not entitled to attorney's fees under the circumstances of this case.

Without deciding the Farmworkers' entitlement to attorney's fees at this point,[14] and noting that Rule 215 applies whenever a party "may" be entitled to such fees, the Court sees little harm in a meeting of the parties. A mutually agreeable resolution of the fee question, if one is possible, is far preferable to a resolution imposed by this Court. The parties are therefore directed to confer within 30 days of this Order. At that meeting, the parties are to discuss, in addition to attorney's fees, the Farmworkers' request for costs and such other cost-related items as may be outstanding. *See* Local Rule 14(f). The parties shall then report back to the Court at a status conference, to be held under Local Rule 215(a), at 10:00 a.m., April 25, 1989.

SO ORDERED.

---

14. In this regard, the Court notes the standards set forth in *Nepera Chemical, Inc. v. Sea–Land Service, Inc.,* 794 F.2d 688, 701–03 (D.C.Cir. 1986). Of particular interest is the rule, implicitly articulated by the Court of Appeals, that "bad faith" attorney's fees may be available whenever punitive damages would be appropriate. *Id.* at 702–03.