Elaine JOHNS et al., Plaintiffs,

v.

A. Bruce ROZET et al., Defendants.

Civ. A. No. 91–130.

United States District Court,
District of Columbia.

Feb. 3, 1992.

Barbara J. Dougherty of Akin, Gump, Hauer & Feld, Washington, D.C., for plaintiffs.

Judith Bartnoff, Steven M. Schneebaum and Mark K. Osbeck of Patton, Boggs & Blow, Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are the plaintiffs' Motion for Class Certification and Motion to Dismiss Counterclaim and to Strike Affirmative Defenses. The Court has carefully considered the submissions of the parties, the applicable law, and the entire record herein, and concludes that the Motion for Class Certification shall be granted, and the Motion to Dismiss Counterclaim and to Strike Affirmative Defenses shall be granted in part, and denied in part.

### I. Background

This case has a long and complicated history. A related case was filed in March 1987 in the District of Columbia Superior Court. The plaintiffs, low-income tenants in a housing project, the Tyler House, sought redress from their landlords and its management company for allegedly sub-standard and unhabitable living conditions. Trial was eventually set for June 26, 1989. On the eve of trial, the three owner defendants filed for bankruptcy in California. Plaintiffs were then granted leave to file a second amended complaint naming two affiliates of the bankrupt owner defendants—the National Investment Development Corporation ("NIDC") and Housing Resources Management, Inc. ("HRM"). Trial was rescheduled for September 12, 1990. In March 1990, the plaintiffs were denied leave to file a third amended complaint adding an additional defendant, the Associated Financial Corporation ("AFC"), a corporate affiliate of NIDC and HRM. One week before trial was to begin, NIDC filed for bankruptcy in California. The next day, defendant Moses removed the case to federal court and moved to transfer venue to California. Judge Jackson remanded the case back to Superior Court and held in abeyance a ruling on the issue of sanctions against the defendant pending completion of the trial.

The issue of plaintiffs' class certification was litigated by the plaintiffs in the Superior Court case. Six separate motions and responses on the issue were submitted in 1989, and on April 27, 1989, Judge Greene certified the class consisting of all tenants residing in Tyler House as of July 27, 1988. *See Tyler House Tenant Counsel v. Tyler House Apartments, Ltd,* No. 1636–87, *Elaine Johns v. Tyler House Apartments, Ltd,* No. 660–88, Memorandum and Order (D.C.Super.Ct. April 27, 1989) ("Certification Order").

On HRM's representations of imminent bankruptcy, the Superior Court again continued the case. By Order of October 3, 1990, denying HRM's motion to reopen discovery on class certification, the court stated:

> The Court previously advised HRM's counsel in a conference call … that the coupling of HRM's settlement offer with its threat of bankruptcy raised questions about the good faith of both of these representations.… In short, HRM does not come to this motion with clean hands; under all circumstances, its protestations

of concern about the tenant class do not gibe with its continuing actions, which effectively are denying those tenants their day in court.

The plaintiffs allegedly discovered who had been the true owners of the Tyler House since 1986, and on October 1, 1990, plaintiffs moved to amend their Superior Court complaint to add Mr. Rozet, Mr. Ross, and AFC—the defendants now before this Court. Judge Taylor denied plaintiffs the opportunity to amend their complaint, in part because she feared it would delay the trial, require reopening discovery, and disrupt intensive mediation.[1]

The plaintiffs then turned to this Court to proceed against Ross, Rozet and AFC. The plaintiffs allege that Ross, Rozet and AFC are the true owners of Tyler House through a web of shell corporations designed solely to insulate the defendants from accountability to their tenants. The plaintiffs claim that the defendants breached the warranty of habitability, were negligent in their operation of Tyler House, and fraudulently promised to repair and maintain the building.

This Court denied the defendants' Motion to Dismiss based on the *Colorado River* doctrine in an Opinion filed July 15, 1991, 770 F.Supp. 11.

On January 8, 1992, the Superior Court approved a class settlement which involved an entry of a large judgment against the remaining defendants.

## II. Analysis

### A. *Motion for Class Certification*

Plaintiffs Elaine Johns and Julia Ann Simpson, on behalf of themselves and as representatives of a class comprised of all current tenants of Tyler House who were residents there as of July 27, 1988, seek to have said class certified by this Court pursuant to Fed.R.Civ.P. 23 and Local Rule 203. Plaintiffs argue that the Superior Court's previous class certification bars relitigation of the issue under the doctrine of

issue preclusion, and that even if the issue is relitigated, the proposed class meets the requirements of Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3). The defendants maintain that the doctrine of issue preclusion does not apply, and that the proposed class action fails to meet the requirements of Fed.R.Civ.P. 23.

*1) The Issue of Class Certification Has Been Conclusively Decided by the Superior Court. The Doctrine of Collateral Estoppel Bars this Court's Reconsideration of the Issue*

■ Under the doctrine of collateral estoppel, a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ..." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). For the doctrine to apply, three requirements must be met:

(1) [T]he issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court.

(2) [T]he issue must have been "actually and necessarily determined by a court of competent jurisdiction" in the first trial.

(3) [P]reclusion in the second trial must not work an unfairness.

*Jack Faucett Associates, Inc. v. AT & T,* 744 F.2d 118, 125 (D.C.Cir.1984), *cert. denied* 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (citing *Otherson v. Dep't of Justice, INS,* 711 F.2d 267, 273 (D.C.Cir.1983)). The offensive use of collateral estoppel is within the discretion of the trial judge. *Faucett* at 126, citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). As an equitable doctrine, notions of fairness to both parties must be considered. *Faucett* at 125.

■ The issue of class certification was actually litigated, strongly contested by the parties and directly determined in

---

1. *See Elaine Johns et al. v. Tyler House Apartments, Ltd.,* et al., No. CA–660–88, Order at 2–3 (D.C.Super.Ct. Apr. 9, 1990).

the Superior Court's April 27, 1989 Memorandum and Order. Thus the first requirement set forth in *Faucett* is satisfied. The same "parties or their privies" are involved here, despite the defendants' assertions to the contrary. The plaintiffs are the same, and the class to be certified is essentially identical.[2] While the defendants to this lawsuit, namely Ross, Rozet, and AFC were not parties to the Superior Court case, the plaintiffs have met their burden of showing that the instant defendants were privies of the defendants to the Superior Court case. The plaintiffs have demonstrated that defendant AFC financed the Superior Court litigation by expending over $200,000 in legal fees and directed Superior Court defendants to file for bankruptcy. *See* Pl.'s Reply at 9; Pl.'s Reply, Att. J. In addition, the plaintiffs offered evidence that AFC's own legal counsel considered the principals of AFC (defendants Ross and Rozet) to be subject to liability for failure to comply with a Superior Court consent decree, and that defendants Ross and Rozet were the only directors of PISI, one of the defendants to the Superior Court suit. *See* Pl.'s Reply at 9; Pl.'s Reply, Att. I, J.

■ The second requirement is that the issue was actually and necessarily determined in the first action. The Superior Court's Certification Order of April 27, 1989 demonstrates that this requirement is met. The defendants argue that the doctrine of issue preclusion does not apply to settlements. *See* Def.'s Opposition at 18–19. However, the law of this circuit does not support this view. Rather, the Court of Appeals has stated that consent decrees have a preclusive effect as to "issues actually litigated and determined in the consent decree". *I.A.M. Nat'l. Pension Fund v.*

*Industrial Gear Manufacturing Co.*, 723 F.2d 944, 949 (D.C.Cir.1983). In this case, the issue of class certification was determined by the Superior Court. This determination was necessary to the settlement reached in the case, since the class was a party to the settlement. Therefore, the doctrine of issue preclusion applies.[3]

■ Regarding the third requirement, preclusion in this case will not work an unfairness. As indicated above, the defendants to this action had a "full and fair" opportunity to litigate the class certification issue. *See Faucett*, 744 F.2d at 126; *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Application of the doctrine may work an injustice where new material evidence is available. *Faucett* at 126. The defendants argue that there is an "enormous amount" of new evidence which pertains to class certification. Defs.' Opp. to Class Certification at 20. However, for reasons that will be discussed below, the Court has determined that this evidence is not material or significant such that its exclusion from consideration would work an unfairness. Neither does the addition of a fraud count to the complaint, an issue not raised in the Superior Court case, materially change the class certification analysis here.

### 2) The Proposed Plaintiff Class Meets the Requirements of Fed.R.Civ.P. 23(a) and 23(b)(3)

Even assuming, *arguendo*, that the doctrine of issue preclusion were not applicable to this matter, the Court would reach the same result, because after carefully evaluating the evidence, the Court concludes that the proposed class meets the

---

2. The Superior Court named the class as "all persons who were tenants of Tyler House Apartments as of July 27, 1988". *Tyler House Tenant Counsel v. Tyler House Apartments, Ltd,* No. 1636–87, *Elaine Johns v. Tyler House Apartments, Ltd,* No. 660–88, Memorandum and Order at 6 (D.C.Super.Ct. April 27, 1989). The plaintiffs currently seek certification of a class of all *current* tenants who were tenants of Tyler House Apartments as of July 27, 1988. This would exclude any tenants originally in the class who have since moved away. This minor difference does not affect the merits or the

nature of the motion for class certification in any significant way.

3. This case is easily distinguished from *Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1551 n. 20 (D.C.Cir.1987). In *Practical Concepts,* the court held that the doctrine of issue preclusion does not apply to a stipulated judgment where the dispositive issue has not even been raised. *Id.* In the instant case, the issue of class certification was raised, extensively debated, and decided.

requirements set forth in Fed.R.Civ.P. 23(a) and 23(b)(3).

Rule 23(a) sets forth the prerequisites for maintaining a class action: (1) the class is so numerous that joinder is impracticable; (2) there are common questions of law or fact among the class; (3) the representative parties' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition, one of the criteria set forth in Rule 23(b) must be satisfied. The plaintiffs seek certification under Rule 23(b)(3), which provides that questions of law or fact common to the class members must predominate over any questions affecting only individuals, and the class action must be superior to other methods for adjudicating the controversy fairly and effectively. Fed.R.Civ.P. 23(b).

■ The defendants do not seriously dispute that the plaintiffs satisfy requirements (1) and (2) of Rule 23(a). The proposed class is so numerous that joining all its members individually would be impracticable. The plaintiffs assert that approximately 250–300 people are in the class of current tenants who have resided at Tyler House since July 27, 1988. While there is no minimum number of members required to make a certifiable class, a class of 250 people clearly satisfies the numerosity requirement. *See, e.g., EEOC v. Printing Indus. of Metro. Washington, D.C., Inc.,* 92 F.R.D. 51, 53 (D.D.C.1981) (noting that as few as 25–30 class members should raise a presumption of impracticable joinder). The second requirement is also met, because there are questions of law or fact common to the class. These include the factual determination of the living conditions existing in the common areas of Tyler House, and legal issues including whether there was a breach of warranty of habitability, negligence, public nuisance, and fraud in the existence of these conditions and failure to repair them. *See* Complaint generally.

■ The third requirement of Rule 23(a) is that the claims of the representatives must be typical of those of the class. A representative's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of the other class members, and if the claims of the representatives are based upon the same legal theory. *Covelo Indian Community v. Watt,* 551 F.Supp. 366, 377 (D.D.C.1982), citing *Printing Industry,* 92 F.R.D. at 54. The defendants claim that this requirement is not met because they have asserted counterclaims and defenses against the class representatives that do not apply to the rest of the class.

■ The plaintiffs satisfy the typicality requirement. The named representatives are residents of Tyler House, and their claims arise from the same conditions in the common areas of Tyler House as do the claims of the class members, and are premised upon the same breach of warranty of habitability and negligence theories. While the defendants have raised claims and defenses against the named representatives, there remain issues of the defendants' liability common to the entire class, for which the plaintiffs' claims are typical. The counterclaims and defenses may affect the named plaintiffs' eventual right to recover, but they will not change the presentation of the plaintiffs' case regarding the defendants' liability. *See Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 377 (D.Del. 1990); H. Newburg, 1 *Newburg on Class Actions* § 3.16, at 175 (2d ed. 1985, & Supp. 1991) (and cases cited therein). Neither is this Court convinced that these counterclaims and defenses (of which the merits, at least at this point, seem highly questionable) will become a major focus of this litigation. *Compare Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461 (D.D.C.1984). If the existence of the counterclaims and defenses does create problems as the case progresses, the Court may take appropriate measures pursuant to Fed.R.Civ.P. 23(c) and 23(d) to manage the case.

■ The final requirement of Rule 23(a) is that the representatives will "fairly and adequately" protect the interests of the class. This requirement involves two principal criteria: " '1) the named representa-

tive[s] must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representatives must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Littlewolf v. Hodel,* 681 F.Supp. 929, 936 (D.D.C.1988), citing *National Association for Mental Health, Inc. v. Califano,* 717 F.2d 1451, 1458 (D.C.Cir. 1983). The burden is on the defendants to demonstrate that the representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

■ This is the most hotly contested issue. The defendants have garnered evidence from several witnesses which they claim shows that the named representatives, Elaine Johns and Julia Ann Simpson, will not adequately protect the interests of the class. They argue that the plaintiffs lack the requisite character and integrity to lead a class action, are not trustworthy and credible, have not been forthcoming in responding to discovery, do not have the support of a large portion of the proposed class, and have interests in conflict with the class.

Most of the support for these charges is provided by the depositions of three management representatives [4] and several tenants who are rivals of the plaintiffs for the leadership of the tenants' association in the building.[5] The testimony is almost entirely based on hearsay, rumor, and scurrilous gossip. Very little of the testimony seemed based on personal knowledge or would be admissible in court. This Court is not convinced that there is any merit to the defendants' allegations.

Even if the Court were convinced by the defendants' allegations, they are not relevant to the issue of adequacy except as they bear on the two criteria described above: the existence of conflicts or antagonisms among class members, and the named class members' ability to vigorously prosecute their case. *See Littlewolf v. Ho-*

*del,* 681 F.Supp. at 936; *Haywood v. Barnes,* 109 F.R.D. 568, 579 (E.D.N.C.1986) ("Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications".). The named class members themselves have demonstrated their ability to "put up a good fight" through the success of their claims in the protracted Superior Court litigation. *See EEOC v. Printing Industry of Metropolitan Washington,* 92 F.R.D. at 54. In addition, it is undisputed that the named representatives' able counsel, of the law firm of Akin, Gump, Hauer & Feld, are qualified to vigorously represent the class in this case. Defs.' Opposition to Motion for Class Certification at 24.

■ The defendants present the testimony of political opponents of the Tyler House tenant council, headed by plaintiff Elaine Johns, criticizing the tenant council, and allege that antagonism surrounding the internal politics of Tyler House defeats the adequacy requirement. Yet the Tenant Council is not a party to this action, and the internal politics of Tyler House is not relevant to the issues in this litigation. Certification should be denied only if the antagonism goes to the subject matter of litigation. *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986); 7A Wright, Miller & Kane, Federal Practice and Procedure § 1768 (1986). *See also Littlewolf v. Hodel,* 681 F.Supp. 929, 937 (D.D.C.1988) ("incantations of the *potential* for antagonism are insufficient" to deny certification). Even Ms. Johns' political adversaries acknowledged that their disagreements with her involved the internal politics of the tenant council, and not the issues of the conditions at Tyler House which is the subject of this lawsuit. *See* Burnett Dep. at 135–36, 142; Terrell Dep. at 93, 111. There is no apparent evidence that Ms. Johns' continued status as class representative will have any relationship to her leadership of the tenant association. Therefore any

---

**4.** *See* depositions of Stephanie Smith Howard, Milton Winfield Showell, and Anita R. Smith. (Attachments to Def.'s Opposition to Class Certification).

**5.** *See* Depositions of Cassandra B. Burnett, Beatrice Hammonds, Dorothea E. Milton (a former tenant) and Marsha Terrell.

political infighting alleged by defendants is not a basis for denying class certification. Rather, the interests of the representatives appear coextensive with the interests of the entire class for the purposes of this lawsuit, in that their claims are based on the same factual and legal issues regarding the conditions at Tyler House as the other potential class members' claims.[6]

Thus the Court concludes that the potential class satisfies the prerequisites of Fed.R.Civ.P. 23(a). Moving on to the requirements of Fed.R.Civ.P. 23(b)(3), the Court finds, and the defendants do not appear to dispute, that a class action is the superior method to adjudicate this controversy. Noteworthy factors in this determination are the numerosity of the proposed class, the efficiency of litigating the common claims against these defendants in one action rather than in multiple suits, and the difficulties the individual low-income tenants would face in attempting to bring their claims separately. *See Tenants Assoc. for A Better Spaulding (TABS) v. HUD*, 97 F.R.D. 726, 729, 732 (N.D.Ill. 1983).

The defendants argue that the proposed class does not satisfy the requirements of Rule 23(b)(3) because the fraud count in the complaint raises individual reliance questions such that questions of law or fact common to the class do not predominate over questions affecting only individual members. The Court is not convinced by this reasoning. The fraud count concerns a consent decree which, plaintiffs allege, made identical promises to plaintiffs on behalf of the class. Therefore, plaintiffs claim, a large number of people were defrauded in an identical manner, so that class action treatment is appropriate. It appears that the potential individual questions presented are questions of reliance. Professor Newberg has noted that challenges pursuant to Rule 23(b)(3) because of reliance have usually been rejected, because reliance goes to the issue of damages

rather than to the underlying, predominant, common issue of liability. H. Newberg, 1 *Newberg on Class Actions* § 4.26, at 326 (2d Ed.1985). This assessment is applicable in the context of this case. If it later appears that there will be a large number of individual factual questions on the issue of reliance, the Court will consider a separate proceeding on the issue. *See* Fed. R.Civ.P. (c)(4), Advisory Committee Notes, 1966 Amendment.

### B. *Motion to Dismiss Counterclaim and Strike Affirmative Defenses*

### 1. *Dismissal of the Counterclaim Is Not Justified at this Juncture*

The defendants have filed a counterclaim in this action through which they allege waste, negligence, intentional interference with contractual relation, and breach of contract. The plaintiffs argue that the counterclaim improperly seeks relief against non-parties and, under Fed.R.Civ.P. 13 and the due process clause, should therefore be dismissed. Alternatively, the plaintiffs request that this Court dismiss Count II (negligence) and Count III (intentional interference with contractual relation) for failure to state a claim upon which relief may be granted.

The Court is not convinced by the plaintiffs' contention that the counterclaim should be dismissed because it seeks relief against non-parties. The counterclaim does not seek relief against non-parties. Rather, it names the named plaintiffs, Elaine Johns and Julia Ann Simpson, as the counterclaim-defendants. Counterclaim ¶ 4. The counterclaim does state that if the facts are as they allege "then counterclaim-defendants and certain members of the proposed class are liable to counterclaim-plaintiffs", counterclaim ¶ 6, however, such a statement of possible liability does not join the unnamed members of the proposed class as counterclaim plaintiffs. An action may be maintained against any

---

6. While the defendants claim that the named plaintiffs lack the support and trust of a large portion of the proposed class, they have not provided evidence to back up this assertion. Rather, they offered testimony from five or six potential class members, out of a pool of 250 to 300 potential class members. Given the opportunity for dissatisfied class members to "opt-out" of the class, such a showing is unpersuasive. *See* Fed.R.Civ.P. 23(c)(2).

of several alleged joint tortfeasors without joining the others. *Bell v. Westinghouse Electric Corp.,* 483 A.2d 324, 328 (D.C. 1984).[7]

■ The plaintiffs also argue that Counts II and III of the counterclaim should be dismissed for failure to state a claim upon which relief may be granted. Regarding Count II, the negligence count, the plaintiffs claim it must be dismissed as redundant of the defendants' affirmative defense of contributory negligence. This argument fails because while the two are closely related, they are analytically distinct. The counterclaim of negligence involves "conduct which creates an undue risk of harm to others. Contributory negligence is conduct which involves an undue risk of harm to the person who sustains it." Restatement (2d) of Torts § 463, Comment (b). Therefore, while the Court would prefer that the defendants pare down their pleadings, it cannot in this instance require them to choose between the counterclaim of negligence and the affirmative defense of contributory negligence on the basis of redundancy.

■ The plaintiffs argue that the intentional interference with contract claim should be dismissed because the defendants fail to allege three of the four essential elements of the tort. The elements are: (1) existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach; and (4) damages resulting from the breach. *Tuxedo Contractors, Inc. v. Swindell–Dressler Co.,* 613 F.2d 1159 (D.C.Cir.1979). Plaintiffs state that the defendants have only alleged the first: existence of two contracts.

■ The plaintiffs construe the pleading requirements too stringently. A motion to dismiss may be granted only when the moving party has shown "beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Moreover, a complaint (or, in this instance, a counterclaim) must be liberally construed, granting the complainant "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) (quoting *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). A claim will not be dismissed under Fed.R. 12(b)(6) merely because it does not allege with specificity every element of a cause of action, if it contains allegations from which an inference may be drawn that evidence on the essential elements will be produced. *St. Joseph's Hospital, Inc. v. Hospital Corporation of America,* 795 F.2d 948, 954 (11th Cir.1986), citing C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1216, at 604. *See also High v. McLean Financial Corp.,* 659 F.Supp. 1561, 1564 (D.D.C.1987), citing C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1357 (dismissal under Rule 12(b)(6) is proper only when the allegations of the complaint clearly demonstrate that the plaintiff does *not* have a claim).

■ In this case, the defendants have made sufficient allegations from which all of the elements of a cause of action for intentional interference with contractual relation can reasonably be inferred. *See* Counterclaim at 18–19; Defs.' Opposition at 10–12. Specifically, plaintiffs' knowledge of the contracts can be inferred from the allegation of intentional interference with them. Further, breach of the contract can be inferred from the allegation that plaintiffs' actions "directly interfered" with defendants' ability to perform contractual obligations. Finally, damages are asserted in paragraph 29 of the counterclaim, which, it may be inferred, resulted from the

---

7. To the extent that the defendants state that they "may seek to add to their suit others who are jointly liable to them", the Court notes, without ruling (since the issue is not now in controversy), that there are strong reasons to hold that Rule 13 counterclaims may not be brought against unnamed class members. *See*

H. Newberg, *Newberg on Class Actions* § 4.34, p. 351 (2d ed. 1985); Steinman, *The Party Status of Absent Class Members: Vulnerability to Counterclaims,* 69 Geo.L.J. 1171, 1186 (1978); *Frederick County Fruit Growers Assoc. v. Dole,* 709 F.Supp. 242, 246 (D.D.C.1989) (discussing split in authority).

breach of the contracts. While this counterclaim may not, on its face, state a very strong claim, it survives the liberal standard by which Rule 12(b)(6) motions are judged.

### 2. The Affirmative Defenses of Laches and Unclean Hands Are Unavailable in a Legal Action and Shall Be Stricken; The Assumption of Risk Defense Survives this Motion But May Be Asserted Only for Limited Purposes

██ Plaintiffs ask this Court to strike the defendants' affirmative defenses of unclean hands, laches, and assumption of risk. Under Rule 12(f) of the Federal Rules of Civil Procedure, "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" may be stricken. Rule 12(f) motions generally are viewed with disfavor as a drastic remedy. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors, Pty. Ltd.*, 647 F.2d 200, 201 (D.C.Cir.1981); 5A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1380, at 647 (1990).

██ The plaintiffs have demonstrated that striking the defenses of laches and unclean hands is appropriate. The instant action is an action for monetary relief rather than equitable remedies. The defense of unclean hands is unavailable in an action for damages under District of Columbia law. *Truitt v. Miller*, 407 A.2d 1073, 1079–80 (D.C.1979). Similarly, the defense of laches is a defense in equity, rather than in law. *Schmittinger v. Schmittinger*, 404 A.2d 967, 970 (D.C.1979); *Pennsylvania Dep't of Revenue v. Philadelphia*, 5 Pa. Cmwlth. 358, 290 A.2d 734, 736 (1972). Therefore these equitable defenses have no application in this action brought under law, and must be stricken from the answer.[8]

Finally, the plaintiffs ask the Court to dismiss the assumption of risk defense on the basis of the law set forth in *Scoggins v. Jude*, 419 A.2d 999, 1004–1005 (D.C.1980), which holds, as a matter of public policy, that the landlord of substandard low income housing may not assert as a defense that a tenant assumed the risk of living there. A tenant's decision to remain at the premises may not be construed as "voluntary". *Id.* The defendants argue that *Scoggins* is distinguishable here, because they do not argue that the plaintiffs assumed the risk by continuing to live in the building; rather, they claim that the plaintiffs have caused the conditions of which they complain, and that their alleged "decision to act in such a way that indecent, unsafe and unsanitary conditions are likely to result" constitutes an assumption of risk to which the *Scoggins* prohibition is not applicable. *See* Defs.' Opposition at 2–3, n. 3.

██ It seems to the Court that the defendants are describing a contributory negligence defense rather than an assumption of risk defense. Contributory negligence is applicable in the landlord-tenant context where there is sufficient evidence that a tenant "unreasonably increased the exposure he or she otherwise would have had to danger created by a landlord's failure to comply with the Housing Regulations". *Scoggins* at 1004–1005. The defendants asserted contributory negligence in their answer, so the assumption of risk defense may well be redundant. However, in light of the substantial overlap between the two concepts, *see Scoggins* at 1004–1005; *Banks v. District of Columbia*, 551 A.2d 1304, 1307–1310 (D.C.1988), and the liberal standard of review for motions to strike, the Court can not strike the assumption of risk defense at this time. However, the Court notes that it shall not permit the defense if there is an insufficient factual predicate, or if the basis of the defense becomes, in fact, that the plaintiffs allegedly assumed the risk by continuing to live in the building. *See Scoggins* at 1004–1006.

### III. Conclusion

For all of the reasons previously stated herein, the Court shall grant the plaintiffs' Motion for Class Certification. The plain-

---

8. The defendants do not seriously dispute this conclusion. *See* Defs.' Rejoinder at 2–3.

tiffs'·Motion to Dismiss Counterclaim and to Strike Affirmative Defenses shall be granted in part, and denied in part. The affirmative defenses of laches and unclean hands shall be stricken, while the remaining affirmative defenses and the counterclaim shall stand.