# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: J.E., I.E., K.E., & L.E.**

**No. 14-0666** (Calhoun County 13-JA-34 through 13-JA-37)

**FILED**

March 16, 2015
**RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father, by counsel Rebecca Stollar Johnson, appeals the Circuit Court of Calhoun County's July 12, 2014, order denying his motion to set aside its April 9, 2014, order terminating his parental rights to J.E., I.E., K.E., and L.E. The Department of Health and Human Resources ("DHHR"), by counsel, Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Michael W. Asbury Jr., filed a response on behalf of the children also supporting the circuit court's order. On appeal, petitioner argues that the circuit court (1) lacked venue to hear this abuse and neglect matter; (2) erred in finding that the DHHR proved by clear and convincing evidence that he sexually abused one of the children; (3) erred in denying his motion for a post-adjudicatory improvement period; and (4) erred in terminating his parental rights upon a finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed three original abuse and neglect petitions against petitioner with regard to his children over the course of three years. The first petition, filed in 2011 in the Circuit Court of Clay County, appears to have alleged truancy as the primary allegation.[1] When the Circuit Court of Clay County discovered that petitioner resided in Calhoun County, it transferred the 2011 petition to the Circuit Court of Calhoun County for further proceedings.[2] The Circuit Court of Calhoun County granted petitioner an improvement period in the 2011 proceeding, and the children remained in petitioner's physical custody.

The second petition, filed in 2012 again in the Circuit Court of Clay County, alleged domestic violence between petitioner and his wife; unsanitary conditions in the home; and,

---

[1]Although referenced in the current action and at issue in petitioner's first assignment of error, the parties did not include the original petitions or transcripts from the 2011 and 2012 proceedings in the record on appeal.

[2]By order entered on February 25, 2013, the Circuit Court of Calhoun County dismissed the 2011 proceedings.

1

again, truancy. The Circuit Court of Clay County again transferred the 2012 petition to the Circuit Court of Calhoun County for consolidation with the pending 2011 petition. At the time of the 2012 petition's filing, the DHHR removed the children from petitioner's physical custody and placed them with a relative, M.W., and her husband. In December of 2012, M.W. informed Child Protective Services ("CPS") that K.E. had stated that petitioner touched her for sexual gratification. A few days later, an expert in child sexual abuse interviewed K.E., but the child did not make any allegations against petitioner during that interview. In January of 2013, a CPS worker interviewed K.E., and during that interview, K.E. stated that petitioner touched her for sexual gratification.

In February of 2013, the DHHR removed the children from M.W.'s care due to concerns with the condition of her home; the children's unkempt appearance on a regular basis while under her care; and M.W.'s possible mental health issues. In the following six months, the DHHR relocated K.E. into three foster homes because of continued complaints that she presented severe behavioral issues, such as tantrums, screaming, wetting herself, and masturbation. K.E. underwent therapy and a forensic interview related to her behaviors and the alleged sexual abuse.

In May of 2013, the DHHR filed the instant abuse and neglect petition against petitioner and his wife in the Circuit Court of Calhoun County. As to petitioner, the 2013 petition alleged that he sexually abused K.E., who related that petitioner touched her vaginal area during her baths and at other times for sexual gratification.

In August and September of 2013, the circuit court held two adjudicatory hearings on the 2013 petition. The CPS worker who interviewed K.E. testified as to her January interview, which she admitted was somewhat unfocused because it was difficult to ascertain information from a small child. Nonetheless, the CPS worker testified that, in that interview, K.E. stated that petitioner "touched the—[her] cooch"; that when he touched her vaginal area he also "touche[d] his cooch"; and that she seemed to indicate that this occurred in several rooms throughout the home, at different times, and, on at least one occasion, petitioner was not wearing clothes when he touched her. K.E. did not specify during this interview when or where the incident or incidents occurred. Dr. Timothy Saar and an assistant in Dr. Saar's office, Sandra Walls, both testified for the DHHR that they interviewed K.E. in January of 2013, and K.E. disclosed that petitioner touched her vaginal area. Dr. Saar diagnosed K.E. with attention deficit hyperactivity disorder and disorders related to child neglect and child sexual abuse. Dr. Bobby Miller, a licensed psychologist, testified for petitioner that, in his expert opinion, petitioner provided no indication that he was a pedophile or otherwise demonstrated the profile of a sexual offender. Petitioner and his wife testified and denied the allegations that petitioner inappropriately touched K.E. The circuit court determined that, in weighing the credibility of the testimony, petitioner sexually abused K.E. Therefore, it adjudicated the children as abused and neglected and petitioner as an abusing parent.

In December of 2013, at the dispositional hearing, petitioner moved for a post-adjudicatory improvement period arguing that he had a deep bond with his children and would comply with services to reunify with them. The circuit court heard testimony from petitioner and his wife that, although he did not sexually touch K.E., he had several areas of parenting that

could use improvement. The CPS worker, however, testified that CPS had worked with petitioner in the past, but that he failed to follow through on services provided and to fully admit to all of his issues. By order entered on January 9, 2014, the circuit court denied petitioner's motion and terminated his parental rights to all four children. On April 9, 2014, it entered a corrected order. Subsequently, petitioner moved to set aside the April 9, 2014, order, but the circuit court denied that motion on June 12, 2014. This appeal followed on July 11, 2014.

This Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises four assignments of error. He first argues that the Circuit Court of Calhoun County lacked venue to hear this matter. However, petitioner cites to no objection or motion on this issue in the record on appeal. To the contrary, as to the 2011 and 2012 petitions, the circuit court's order clearly states that those petitions were transferred from Clay to Calhoun counties "without objection." As to the instant 2013 petition, we also find no objection or motion on this issue by petitioner before the circuit court. We have explained that "'"[j]urisdiction deals with the power of the court, while venue deals with the place in which an action may be tried." Syllabus Point 7, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963).' Syllabus Point 2, *Vanover v. Stonewall Casualty Co.*, 169 W.Va. 759, 289 S.E.2d 505 (1982)." *Hansbarger v. Cook*, 177 W.Va. 152, 157, 351 S.E.2d 65, 70 (1986). Furthermore, "[s]ubject matter jurisdiction cannot be conferred by consent or waiver, but venue may be." *Id*. We find that petitioner's failure to object to venue before responding to the merits of the pleading constitute waiver of this issue for appellate review. *See State v. Asbury*, 187 W.Va. 87, 91, 415 S.E.2d 891, 895 (1992) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

Next, petitioner claims the circuit court erred in finding that the DHHR proved by clear and convincing evidence that he sexually abused K.E. West Virginia Code § 49–6–2(c) directs that, following an adjudicatory hearing, a circuit court "shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . ." Further, that code provision requires that "[t]he findings must be based

3

upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof." *Id*. In discussing this evidentiary standard, we have previously held that

> W.Va. Code [§] 49–6–2(c) [1980], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden.

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted).

Upon our review, it is clear that the evidence below was sufficient to support the circuit court's finding. K.E. disclosed to several individuals that petitioner sexually abused her in his home. Although petitioner argues that "the only person [K.E.] disclosed to is the foster mother [M.W.] who is suffering from mental illness and may have coached the child[,]" our review of the record reveals that K.E. also disclosed these abuses to the CPS worker and two psychological professionals in January of 2013. The circuit court heard detailed testimony from Dr. Saar, Ms. Walls, and the CPS worker regarding K.E.'s disclosures. Further, while it is also true that petitioner denied these accusations in his testimony to the circuit court, and his wife testified that he did not commit these acts, we have held that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); *see also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Upon our review of the record, we find the circuit court was in the best position to weigh the credibility of this conflicting testimony, and we cannot find, based on the record before us, that the circuit court's findings were erroneous. Moreover, we note that even in the context of criminal procedure, which employs a higher burden of proof than civil abuse and neglect proceedings, "'[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible[.]' Syllabus Point 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981)." *Coleman v. Painter*, 215 W. Va. 592, 598–99, 600 S.E.2d 304, 310–11 (2004). Therefore, we find no error in the circuit court's rulings.

Third, petitioner asserts that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Pursuant to West Virginia Code § 49–6–12(b), circuit courts have the discretion to grant a post-adjudicatory improvement period when the subject parent demonstrates by clear and convincing evidence that he or she will likely fully participate in the improvement period. However, West Virginia Code § 49–6–5(a)(7)(A) directs that the DHHR is not required to make reasonable efforts to preserve the family when the circuit court determines that the parent has subjected the child to aggravated circumstances, "which include, but are not limited to . . . sexual abuse." In this case, due to the nature of the adjudication and petitioner's history before the circuit court, we cannot find that the circuit court abused its discretion in denying his motion for a post-adjudicatory improvement period. The circuit court adjudicated

petitioner as an abusing parent due to his sexual abuse of K.E., which is an aggravated circumstance and does not require reasonable efforts to preserve the family. Moreover, we have recognized that an improvement period is futile if the subject parent has failed to acknowledge the existence of the problem. Syl. Pt. 2, *W. Va. Dept. of Health and Human Res. ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996) ("Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."). Here, petitioner failed to acknowledge the existence of the abuse adjudicated. While petitioner testified at the dispositional hearing that he could make improvements in the areas of "communication" and "understanding" and would generally "take any class or any program" to regain custody, he did not admit to the sexual abuse of K.E. Further, petitioner had previously been granted an improvement period in the 2011 abuse and neglect proceedings, but, notwithstanding that improvement period, the DHHR filed another petition against him in 2012 alleging domestic violence, unsuitable conditions in his home, and truancy. Therefore, the circuit court did not err as to this issue.

Finally, petitioner argues that the circuit court erred in terminating his parental rights upon a finding that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect. Petitioner contends that, notwithstanding the circuit court's finding, less restrictive alternatives existed in this matter under West Virginia Code § 49–6–5(a) and our holding in syllabus point one, in part, of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) ("As a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va. Code, 49-6-5 (1977) will be employed."). We disagree. West Virginia Code § 49-6-5(b)(5) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child

The circuit court specifically found that petitioner, having been adjudicated as an abusing parent, had sexually abused K.E. and that the degree of family stress and potential for further abuse and neglect were so great as to preclude the use of resources to mitigate or resolve family problems or assist him in fulfilling his responsibilities to that child. Petitioner fails to demonstrate that the circuit court was clearly wrong in this finding. During three separate interviews, K.E. told at least three individuals that petitioner sexually abused her. Although petitioner denied these accusations, as explained above, witness credibility rests in the province of the finder of fact. Therefore, the circuit court did not err in finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Further, petitioner's argument that less restrictive alternatives existed in this matter ignores previous decisions of this Court. This Court has often held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syl. pt. 2, *In Re: R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 2, *In re Dejah P.*, 216 W.Va. 514, 607 S.E.2d 843 (2004). Here, given its findings, the circuit court did not err in terminating petitioner's parental rights without the use of intervening less restrictive alternatives. Therefore, upon our review of the record, we find no error.

Based upon our review of the record, we find no error in the circuit court's termination of petitioner's parental rights. Given the facts of this case, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, and termination was necessary for the children's welfare and in the children's best interests. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights and responsibilities upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 16, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II