351 S.E.2d 65

L. Clark **HANSBARGER**, M.D.

v.

Hon. Jerry **COOK**, Judge, Etc.

David K. **HEYDINGER**, M.D., Director, West Virginia Department of Health

v.

Hon. Jerry **COOK**, Judge, Etc.

Nos. 17098, 17099.

Supreme Court of Appeals of West Virginia.

Nov. 26, 1986.

---

Charles G. Brown, Atty. Gen., J. Bradley Russell, David P. Lambert, Asst. Attys. Gen., John S. Haight, Jack Smith, Kay, Casto & Chaney, Charleston, for appellant.

Guy Bucci, Charleston, for appellee.

McGRAW, Justice:

These original proceedings in prohibition, which have been consolidated for decision, arise out of a civil action brought in the Circuit Court of Lincoln County by Dr. L. Clark Hansbarger, then the Director of the West Virginia Department of Health, to enjoin Ida Mae Adkins, doing business as Adkins Rest Home, from operating a nursing home or personal care home in Hamlin, Lincoln County. Dr. Hansbarger and Dr. David K. Heydinger, the current Director of the Department of Health, now seek to prevent the trial of a counterclaim brought by Mrs. Adkins. We conclude that petitioner Hansbarger has demonstrated his entitlement to the relief requested and is entitled to the writ prayed for, but that petitioner Heydinger has failed to make a showing of entitlement to the extraordinary remedy of prohibition.

The facts giving rise to these proceedings are essentially undisputed. On July 17, 1984, Dr. Hansbarger brought suit in the Circuit Court of Lincoln County on behalf of the Department of Health to enjoin the operation of Adkins Rest Home on the grounds that Mrs. Adkins had been operating a nursing home or personal care home without a license, in violation of W.Va.Code § 16–5C–6 (1985 Replacement Vol.), and had subjected the residents of her facility to abuse and/or neglect, in violation of W.Va.Code § 9–6–1 *et seq.* (1984 Replacement Vol.). Upon these allegations

and several affidavits submitted in support thereof, the circuit court issued a preliminary injunction closing the rest home and enjoining its further operation. In addition, the court ordered the residents of the facility transferred to a hospital for medical examinations and appointed a guardian ad litem to represent their interests.

During the summer and fall of 1984, the parties conducted discovery in preparation for a hearing on the propriety of a permanent injunction. In December 1984, Mrs. Adkins filed an answer denying the material allegations of the complaint and counterclaimed against Dr. Hansbarger, "individually and in his official capacity as Director of the West Virginia Department of Health", seeking monetary damages and injunctive relief for alleged violations of 42 U.S.C. § 1983.[1] A copy of the answer and counterclaim was mailed to the Attorney General of West Virginia, counsel for Dr. Hansbarger in the original proceeding.

In January 1985, Dr. Hansbarger sought to remove the counterclaim to the United States District Court for the Southern District of West Virginia. Along with the petition, Dr. Hansbarger filed, by special appearance, a motion to dismiss the counterclaim against him in his personal capacity on the ground of failure of service of process. Dr. Hansbarger contended that since he had instituted proceedings against Mrs. Adkins only in his official capacity, service by mail upon the Attorney General was insufficient to give the circuit court jurisdiction of him as an individual in the counterclaim action. Mrs. Adkins opposed removal of the action to federal court, and, by order entered May 7, 1985, the District Court remanded the counterclaim to the Circuit Court of Lincoln County.

On April 15, 1985, while the removal proceedings were pending, Dr. Hansbarger resigned as Director of the Department of Health and subsequently moved to New Mexico. Dr. Heydinger succeeded Dr. Hansbarger as Director of the Department of Health and was substituted as a party to the counterclaim under Rule 25(d)(1) of the West Virginia Rules of Civil Procedure.[2] Dr. Hansbarger remained a party to the counterclaim in his personal capacity.

Further proceedings were had in the circuit court on September 9, 1985, at which time Dr. Hansbarger renewed his objection to the jurisdiction of the court and moved to dismiss the counterclaim against him. On November 5, 1985, the motion to dismiss was denied. Trial on all issues was set for November 19, 1985, but on the first day of trial the court granted, over the objection of Mrs. Adkins, a motion for bifurcation, and trial of the counterclaim was deferred until a later date.

The hearing on the permanent injunction against Mrs. Adkins lasted twelve days, during which over 60 witnesses, including Dr. Hansbarger, testified as to the allegations of abuse and neglect practiced upon the residents of Adkins Rest Home. The testimony also indicated that Mrs. Adkins had operated an unlicensed facility for a number of years with the acquiescence of the Department of Health, and that Dr. Hansbarger brought suit against her primarily upon the allegations of abuse and neglect rather than for her failure to have a license. On December 11, 1985, the circuit court submitted special interrogatories to an advisory jury empanelled to decide

---

1. 42 U.S.C. § 1983 provides, in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. W.Va.R.Civ.P., Rule 25(d)(1) provides:

When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

the factual issues involved in the case. The answers to the special interrogatories were generally favorable to Mrs. Adkins.

By order dated March 3, 1986, the court adopted the special interrogatory answers of the advisory jury as part of its findings of fact and concluded that all of the evidence had failed to demonstrate a proper basis for injunctive relief against Mrs. Adkins. The court ordered the temporary injunction dissolved and further ordered Dr. Heydinger and the Department of Health to process with all deliberate speed and fairness Mrs. Adkins' application for a renewal license. Finally, the court set March 26, 1986 as the date for trial on Mrs. Adkins' counterclaim. It is this proceeding that the petitioners seek to prohibit.

## I

Dr. Hansbarger's first contention is that he is not an "opposing party" against whom a counterclaim may be brought under the Rules of Civil Procedure. Rule 13(a), relating to compulsory counterclaims,[3] provides, in part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Dr. Hansbarger contends that since he initiated proceedings against Mrs. Adkins only in his official capacity as Director of the Department of Health, he is not, in his personal capacity, a proper "opposing party" within the meaning of this Rule.[4]

We have never had occasion to address the issue of who is an opposing party for purposes of Rule 13(a). The federal courts have discussed the question, however, in relation to Rule 13(a) of the Federal Rules of Civil Procedure, the pertinent part of which is identical to our Rule. The general rule appears to be that "unless a person has submitted himself to the jurisdiction of the court in a capacity by making a claim in that capacity, then he is not an 'opposing party' such that a compulsory counterclaim must and a permissive counterclaim may be entered against him in that capacity." 3 J. Moore & J. Lucas, Moore's Federal Practice ¶ 13.06. *See also* 6 C. Wright & A. Miller, Federal Practice and Procedure (2d ed.1986) *Civil:* § 1404 (1971). Thus, where a plaintiff brings suit in a representative capacity, the defendant may not ordinarily bring a counterclaim against him in his individual capacity under Rule 13. *Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d 875 (2d Cir.1981); *United States v. Timber Access Industries Co.,* 54 F.R.D. 36 (D.Or.1971); *Henkin v. Rockower Bros., Inc.,* 259 F.Supp. 202 (S.D.N.Y.1966); *United States ex rel. Tennessee Valley Authority v. Lacy,* 116 F.Supp. 15 (N.D.Ala.1953), *reversed on other grds.,* 216 F.2d 223 (5th Cir.1954); *Cravatts v. Klozo Fastener Corp.,* 15 F.R.D. 12 (S.D.N.Y.1953); *Higgins v. Shenango Pottery Co.,* 99 F.Supp. 522 (W.D.Pa.1951);

---

**3.** The test of whether a counterclaim is compulsory was stated in Syllabus Point 4 of *State ex rel. Strickland v. Daniels,* 173 W.Va. 576, 318 S.E.2d 627 (1984), restated here in pertinent part: "Under *W.Va.R.C.P.,* Rule 13(a), ... claims and counterclaims arise out of the same 'transaction or occurrence' when there is a logical relationship between the claim and the counterclaim." *See also Harris v. Steinem,* 571 F.2d 119 (2d Cir.1978); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631 (3d Cir.1961). There appears to be no question that Mrs. Adkins' counterclaim satisfies this test.

**4.** The distinction between a suit brought against a state officer in his personal capacity and a suit brought against such officer in his official ca-

pacity was recently stated in *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985):

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 237–238, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978).

*See also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

*Chambers v. Cameron,* 29 F.Supp. 742 (N.D.Ill.1939); *Kainz v. Lussier,* 4 Hawaii App. 400, 667 P.2d 797 (1983).

The federal courts have recognized "that it will not always be wise to apply the 'opposing party' rule mechanically." *Banco Nacional de Cuba v. Chase Manhattan Bank,* 658 F.2d at 886, and have declined to follow the rule in certain limited circumstances where the counterclaim defendant is a real party in interest, such as in the case of a derivative suit brought to adjudicate the rights of all stockholders of a closely-held corporation, *Berger v. Reynolds Metals Co.,* 39 F.R.D. 313 (E.D.Pa. 1966); *Burg v. Horn,* 37 F.R.D. 562 (E.D.N.Y.1965); or a suit brought by a partnership in which the individual partners have a personal, beneficial interest in the claim, *see Scott v. United States,* 173 Ct.Cl. 650, 664–665, 354 F.2d 292, 300 (1965). *See also Moore-McCormack Lines, Inc. v. McMahon,* 235 F.2d 142 (2d Cir. 1956); *Automated Datatron, Inc. v. Woodcock,* 84 F.R.D. 408 (D.D.C.1979); *Klinzing v. Shakey's, Inc.,* 49 F.R.D. 32 (E.D.Wis. 1970); *Abraham v. Selig,* 29 F.Supp. 52 (S.D.N.Y.1939). The federal courts have consistently refused, however, to expand the scope of these limited exceptions to the "opposing party" rule. *See, e.g., Tryforos v. Icarian Development Corp.,* 49 F.R.D. 1 (N.D.Ill.E.D.1970); *Twardzik v. Sepauley,* 45 F.R.D. 529 (E.D.Pa.1968).

█ We believe the opposing party rule has particular application to the facts of this case. The Director of the Department of Health is the state officer charged with the licensing and regulation of nursing homes and personal care homes in this State. W.Va.Code § 16–5C–3 (1985 Replacement Vol.). It is his duty "to ensure protection of the rights and dignity of those using the services of such facilities." W.Va.Code § 16–5C–1. To this end, he is authorized to bring suit on behalf of the State to force nursing or personal facilities to comply with the health laws. W.Va. Code §§ 16–5C–3(p); 16–5C–15. In this capacity the Director of the Department of Health is a "reputable person" who may bring an action to restrain abuse or neglect of an incapacitated adult under W.Va.Code § 9–6–3 (1984 Replacement Vol.). When the Director of the Department of Health brings such actions, whether upon his own initiative or upon complaints received in his office, he is acting in vindication of the public interest, rather than from any personal motivation. He is acting solely in his representative capacity and should not be held to answer personally absent some showing that he has submitted to the jurisdiction of the court in that capacity or will derive some personal benefit from the proceedings.

█ In the case at bar, Dr. Hansbarger was acting in his official capacity as Director of the Department of Health and executing the statutory duties of that office when he brought suit against Mrs. Adkins. There is no showing that Dr. Hansbarger submitted to the jurisdiction of the court in his individual capacity or had any personal, beneficial interest in the litigation which would render him a real party in interest in that capacity. Accordingly, we must conclude that Dr. Hansbarger was not an opposing party in his personal capacity for purposes of Rule 13(a) of the Rules of Civil Procedure and that the counterclaim against him as an individual cannot be maintained by Mrs. Adkins in the Circuit Court of Lincoln County. Indeed, as an aside dedicated to the interest of judicial economy, we do not sense that any cause of action exists against Dr. Hansbarger for performing his duty by proceeding against an unlicensed nursing home.

## II

Dr. Heydinger challenges the venue of the counterclaim brought against him in his official capacity as Director of the Department of Health, in reliance on W.Va.Code § 14–2–2 (1985 Replacement Vol.), which provides, in pertinent part:

(a) the following proceedings shall be brought and prosecuted only in the circuit court of Kanawha county:

(1) Any suit in which the governor, any other state officer or a state agency is made a party defendant....

Dr. Heydinger contends that under this statute the counterclaim against him had to be brought in Kanawha Court and that the Circuit Court of Lincoln County therefore lacks jurisdiction of the counterclaim.

■ Initially, we note that Dr. Heydinger confuses the concepts of venue and subject matter jurisdiction. " 'Jurisdiction deals with the power of the court, while venue deals with the place in which an action may be tried.' Syllabus Point 7, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963)." Syllabus Point 2, *Vanover v. Stonewall Casualty Co.,* 169 W.Va. 759, 289 S.E.2d 505 (1982). Subject matter jurisdiction cannot be conferred by consent or waiver, but venue may be. *Vanover v. Stonewall Casualty Co., supra; Lester v. Rose, supra.* "Venue is procedural and statutes relating thereto are so treated. Venue is not a jurisdictional question in a strict sense of the word. 92 C.J.S., Venue, § 75; 56 Am.Jur., Venue, § 2 *et seq.*" *State ex rel. Chemical Tank Lines, Inc. v. Davis,* 141 W.Va. 488, 494–495, 93 S.E.2d 28, 32 (1956).

Despite language to the contrary,[5] W.Va. Code § 14–2–2 is a venue statute. We have repeatedly held that its provisions are exclusive and controlling as to other, more general venue provisions. *See Board of Education v. MacQueen,* 174 W.Va. 338, 325 S.E.2d 355 (1985); *Thomas v. Board of Education,* 167 W.Va. 911, 280 S.E.2d 816 (1981); *Shobe v. Latimer,* 162 W.Va. 779, 253 S.E.2d 54 (1979); *State ex rel. Ritchie v. Triplett,* 160 W.Va. 599, 236 S.E.2d 474 (1977); *Hesse v. State Soil Conservation Committee,* 153 W.Va. 111, 168 S.E.2d 293 (1969). However, the right to have a case heard in a particular venue may be waived by any party, including the State. *See* 77

Am.Jur.2d *Venue* § 45 (1975); 92 C.J.S. *Venue* § 75 (1955).

"[T]he right of a defendant touching the county of trial is not primarily jurisdictional, but is a personal privilege which may be waived. *Moore v. Norfolk & W. Ry. Co.,* 124 Va. 628, 634, 98 S.E. 635 [636–37]; 67 C.J.Venue, sec. 212. Where the court has jurisdiction of the subject matter, the failure of a defendant to claim the privilege *in the proper manner* implies a waiver. (Citations omitted)."

*Vanover v. Stonewall Casualty Co.,* 169 W.Va. 761, 289 S.E.2d at 506, *quoting Hall v. Ocean Accident & Guarantee Corp.,* 122 W.Va. 188, 193, 9 S.E.2d 45, 47 (1940).

■ The proper method of raising the question of improper venue is by a motion to dismiss under Rule 12(b). *Lester v. Rose, supra.* In *Vanover v. Stonewall Casualty Co., supra,* we went on to say:

The rule that venue can be waived is embodied in Rule 12(b)(1), R.C.P.:

"(h) Waiver or preservation of certain defenses.

"(i) A defense of ... improper venue ... is waived ... if it is neither made by motion under this rule nor included in a responsible pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." 169 W.Va. 762, 289 S.E.2d at 507.

The record before this Court reveals no motion to dismiss made by Dr. Heydinger which raised the venue issue, nor does the question of improper venue arise in his answer to the counterclaim or in any other responsive pleading before us. Ordinarily, Dr. Heydinger's failure to object specifically to venue before pleading to the merits constitutes waiver of the objection. *See*

---

**5.** In *Thomas v. Board of Education,* 167 W.Va. 911, 280 S.E.2d 816 (1981) we addressed the question of whether a third-party action against the State Board of Education could be brought in McDowell County, the county in which the original complaint had been filed. Concluding that W.Va.Code § 14–2–2 required a third-party action against the State Board to be brought in Kanawha County, we found, without discussion, "that the Circuit Court of McDowell County *lacks jurisdiction* of the third-party complaint...." (Emphasis added.) *See also Pitts-*

*burgh Elevator Co. v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983). Dr. Heydinger apparently relies on this dicta in asserting that the Circuit Court of Lincoln County lacks subject matter jurisdiction of Mrs. Adkins' counterclaim against him. In order to avoid further confusion on this point, we expressly disapprove any language in *Thomas* which implies that the requirements of W.Va. Code § 14–2–2 must be met to confer subject matter jurisdiction of an action filed against a state officer or agency.

*Snyder v. Philadelphia Co.,* 54 W.Va. 149, 46 S.E. 366 (1903). *See generally* 77 Am. Jur.2d *Venue* § 47 (1975).

However, even if it could be said that Dr. Heydinger had not waived the exclusive venue provisions of W.Va.Code § 14–2–2 by his failure to plead improper venue under the Rules, we believe he is nonetheless barred from raising the issue. The general rule is that by bringing suit in a particular county or district, the plaintiff submits himself to the jurisdiction of that court for all purposes of that suit, including any counterclaim which the defendant may be required to bring under Rule 13. *See Leman v. Krentler-Arnold Hinge Last Co.,* 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389 (1932); *Howard Concrete Pipe Co. v. Cohen,* 139 Ga.App. 491, 229 S.E.2d 8 (1976). Thus, it has often been held that when a plaintiff brings suit in a particular county or district, he may not thereafter object to the venue of any counterclaim arising out of such suit which is brought in that county or district, even though venue would be improper if the counterclaim had been brought as an independent action. *General Electric Co. v. Marvel Rare Metals Co.,* 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932); *Lesnik v. Public Industrials Corp.,* 144 F.2d 968 (2d Cir.1944); *Exchange Nat'l Bank of Chicago v. Abramson,* 45 F.R.D. 97 (D.Minn.1968); *G & M Tire Co., Inc. v. Dunlop Tire & Rubber Corp.,* 36 F.R.D. 440 (N.D.Miss.1964); *Newell v. O.A. Newton & Son Co.,* 10 F.R.D. 286 (D.Del 1950); *Wasp Oil, Inc. v. Arkansas Oil & Gas, Inc.,* 280 Ark. 420, 658 S.W.2d 397 (1983); *Vanguard Insurance Co. v. Young,* 511 S.W.2d 65 (Tex.Civ.App.1974). *See also* 92 C.J.S. *Venue* § 78 (1955). Since the suit against Mrs. Adkins was instituted on behalf of the Department

of Health in the Circuit Court of Lincoln County, Dr. Heydinger, the representative of the Department of Health, may not now object to the venue of the counterclaim.[6] Accordingly, we conclude that Dr. Heydinger is not entitled to assert improper venue under W.Va.Code § 14–2–2 as a bar to the counterclaim in the action below.

### III

West Virginia Code § 53–1–1 (1981 Replacement Vol.) provides that the writ of prohibition "shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." *See State ex rel. West Virginia Secondary School Activities Comm'n v. Wagner,* 143 W.Va. 508, 102 S.E.2d 901 (1958); *Morris v. Calhoun,* 119 W.Va. 603, 195 S.E. 341 (1938). However, "[t]he extraordinary remedy of prohibition is not available to prevent proceeding in a law action pending in a court which has jurisdiction of the subject matter and of the parties litigant, and there is no clear showing that such court has exceeded its legitimate powers." Syllabus, *Sidney C. Smith Corp. v. Dailey,* 136 W.Va. 380, 67 S.E.2d 523 (1951). *See also Fisher v. Bouchelle,* 134 W.Va. 333, 61 S.E.2d 305 (1950). For the reasons stated herein, we conclude that petitioner Hansbarger has made a showing which would entitle him to the extraordinary relief requested, but that petitioner Heydinger has not.

Accordingly, the writ of prohibition prayed for by petitioner Hansbarger is granted, but petitioner Heydinger's prayer for relief is denied.

**6.** Dr. Heydinger notes that we have already held that W.Va.Code § 14–2–2 controls the venue of third-party actions brought against a state officer or agency. *Thomas v. Board of Education, supra.* He asserts that a counterclaim should be treated in the same manner. This argument does not take into account the fundamental distinction between a counterclaim and a third-party action for purposes of W.Va.Code § 14–2–2. The counterclaim in this case was brought in the venue in which the State, through its duly appointed agent, elected to prosecute its original

action. In the case of a third-party action, the third-party complainant seeks to bring an action against the state officer or agency in a venue to which the officer or agency has never consented. As the Court stated in *General Electric Co. v. Marvel Rare Metals Co.,* "[t]he setting up of a counterclaim against one already in a court of his own choosing is very different, in respect to venue, from hauling him into that court." 287 U.S. at 435, 53 S.Ct. at 204. *See also R.E. Linder Steel Erection Co. Inc. v. Alumisteel Systems, Inc.,* 88 F.R.D. 629 (D.Md.1980).

Writ awarded with respect to petitioner Hansbarger. Writ denied with respect to Heydinger.