# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: D.W., G.D., and D.D.

No. 16-0895 (Webster County 16-JA-26, 16-JA-49, & 16-JA-50)

**FILED**

**June 2, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.W., by counsel Dara A. Acord, appeals the Circuit Court of Webster County's August 24, 2016, order adjudicating her as an abusing parent.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children supporting the circuit court's order. On appeal, petitioner argues that the circuit court erred in allowing children G.D. and D.D. to be included in the amended petition, in concluding that she abandoned D.W., and in basing its adjudication, in part, upon her use of a controlled substance and other medications.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court below was an improper venue for the adjudication of petitioner as to children G.D. and D.D.; as to D.W., the Court finds no substantial issue of law or prejudicial error. For this reason, a memorandum decision affirming the circuit court's order, in part, and reversing and remanding, in part, is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed an abuse and neglect petition against petitioner that alleged abandonment of fourteen-year-old D.W. According to the petition, petitioner previously signed guardianship of the child over to P.M. and W.M. ("the guardians") and had not seen the child in nine years, despite the fact that she had permission to visit him. Moreover, the petition

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, we note that the circuit court actually adjudicated petitioner as an "abusive and/or neglectful" parent. However, West Virginia Code § 49-1-201 defines an "abusing parent" as "a parent, guardian or other custodian, regardless of his or her age, whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Because the definition of abusing parents includes a parent who has being adjudicated of either abuse or neglect, the Court will use the term "abusing parent" throughout this memorandum decision.

1

alleged that law enforcement had been dispatched to the guardians' home in March of 2016 over domestic issues therein. Following arguments in the home between the guardians, W.M. shot himself in the face in the child's presence. Because the child indicated to the DHHR that petitioner had not visited him in over nine years, the DHHR sought transfer of the child to its custody. Thereafter, the DHHR filed an amended petition to include children D.D. and G.D., who lived with their father after he was awarded custody of them following the parents' separation. The petition alleged that petitioner had weekend visitation with D.D. and G.D. The petition further alleged that petitioner was on disability as a result of a back injury and that she took multiple prescription drugs for several issues. Petitioner, thereafter, waived her right to a preliminary hearing.

In August of 2016, the circuit court held an adjudicatory hearing, during which petitioner admitted to certain allegations in the amended petition. However, she reserved the right to argue that the facts as alleged did not constitute abuse or neglect. During the hearing, petitioner also admitted to an extended history of drug use, including opiates, albeit by prescription. The circuit court, however, found that petitioner's admissions constituted a factual basis for a finding of abuse or and/or neglect and adjudicated her as an abusing parent. Further, based on her admission to extended prescription drug use, the circuit court found that petitioner was addicted to controlled substances. It is from the adjudicatory order that petitioner appeals.[2]

---

[2] According to the DHHR, as of the filing of its response brief both G.D. and D.D. remain in the custody of their father, K.D. The record shows that the DHHR made no allegations of abuse or neglect against K.D., who has primary custody of the children pursuant to an earlier court order. According to the DHHR, the permanency plan for G.D. and D.D. is to remain with their non-offending father.

As to D.W., by order entered on August 9, 2016, the circuit court terminated the parental rights of D.W.'s father, H.H. The DHHR asserts that he went through several placements with foster families and was ultimately placed at a mental health facility because of self-injurious behavior. In that regard, we urge the circuit court and the guardian ad litem to ensure that he continue to receive any and all special services necessary to adequately address his mental health and/or behavioral needs throughout the continued pendency of this matter and in determining the appropriate permanent placement.

With regard to permanency, according to the DHHR, the permanency plan for D.W. is reunification with petitioner; however, the record is silent as to a concurrent placement plan. While this matter is before the Court only on petitioner's adjudication, in light of the circumstances underlying this matter, we are compelled to urge the circuit court to give careful consideration to the wisdom of reunification. Regardless, however, we further remind the circuit court that West Virginia Code § 49-4-604(a) requires that "[r]easonable efforts to place a child for adoption or with a legal guardian should be made at the same time, or concurrent with, reasonable efforts to prevent removal or to make it possible for a child to return to the care of his or her parent(s) safely."

Finally, this Court reminds the circuit court of its duty to establish permanency. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W. Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, although the Court finds no error with respect to D.W., it finds that under the unusual circumstances of this case, the circuit court lacked venue to adjudicate petitioner as to the additional children G.D. and D.D.

Petitioner asserts that although venue for the original petition was proper in Webster County because that was the county in which the guardians resided, it was error to include children G.D. and D.D. in an amended petition in that county. We agree. W. Va. Code § 49-4-601(a) provides that an abuse and neglect petition may be filed in "the circuit court in the county *in which the child resides,* or if the petition is being brought by the department, *in the county in which the custodial respondent or other named party abuser resides*, or *in which the abuse or neglect occurred*[.]" (emphasis added). *See also* Rule 41 of the Rules of Procedure for Child Abuse and Neglect. Clearly, none of these criteria were met as to petitioner's alleged abuse and/or neglect of G.D. and D.D. such as to establish venue in Webster County. Neither G.D. nor D.D. resided in Webster County, petitioner did not reside in Webster County, and accordingly, no abuse and/or neglect as to G.D. or D.D. occurred there.

The DHHR argues, however, that Rule 19 of the West Virginia Rules of Child Abuse and Neglect Proceedings, permits it to amend an abuse and neglect petition throughout the pendency of an abuse and neglect proceeding.[3] In support of its argument, the DHHR cites Rule 19(b), which specifically provides, in part, that the DHHR may file an amended petition upon newly discovered allegations and expressly states that "the allegations should be included in an amended petition rather than in a separate petition in a new civil action."

We note first that Rule 19(b)—with its attendant prohibition on filing a new petition to assert new allegations—specifically applies to "[a]mendments *after* the adjudicatory hearing[.]" (emphasis added). In this case, the amendment occurred *before* final adjudication; therefore, subsection (b) is not applicable. However, with respect to the DHHR's more general argument that Rule 19(a) permits amendment prior to adjudication insofar as an adverse party has sufficient time to respond to the amendment, this Rule of Procedure does not supplant the statutorily-mandated venue requirements contained in West Virginia Code § 49-4-601(a). While the addition of new allegations is fully contemplated by Rule 19, the establishment of proceedings involving children and/or respondents for whom statutory venue does not lie is not.

In a similar argument, the guardian argues that filing a new petition in another county as to G.D. and D.D. is in fact *prohibited* by both West Virginia Code § 49-4-601(a) and Rule 4a of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which state that

---

[3]DHHR's response, however, appears to focus solely on the "new" allegations regarding petitioner's "lengthy period of drug and/or use of other controlled substances" rather than the addition of new children to the petition, neither of whom had any connection to Webster County.

"[u]nder no circumstances may a party file a petition in more than one county based on the same set of facts." While petitions based on the "same set of facts" are prohibited and "new allegations" should be made by amendment to the existing petition, this unusual case involves two child *parties* and a respondent parent who, as to those two children, has no connection whatsoever to the venue first-established by way of petition in Webster County.

> With regard to venue of civil actions, the Court has stated:
>
> To be clear, the West Virginia Legislature is the paramount authority for deciding and resolving policy issues pertaining to venue matters. Once the Legislature indicates its preference by the enactment of a statute, the Court's role is limited. Our duty is to interpret the statute, not to expand or enlarge upon it. More significantly, any subsequent policy changes must come from the Legislature itself and, in the absence of constitutional or statutory authority to the contrary, this Court has no blanket power to recast the statute to meet its fancy.

*State ex rel. Riffle v. Ranson*, 195 W. Va. 121, 126, 464 S.E.2d 763, 768 (1995) (citations omitted).

While this Court is cognizant of the vitally important need for expediency and efficiency in the pursuit of abuse and neglect matters, it is not permitted to enlarge the statutory venue created by the Legislature. The evolution of West Virginia Code § 49-4-601(a) demonstrates the Legislature's careful consideration of the proper forum for the orderly judicial management of these matters affecting both fundamental rights and the health and well-being of our most vulnerable citizens. *See* 77 Am. Jur. 2d Venue § 4. ("The primary purpose of venue statutes is to provide a convenient, logical, and orderly forum for the resolution of disputes and to prevent inconvenience or hardship to the parties involved in the action."). The 1998 version of the venue-giving statute for abuse and neglect proceedings provided for venue only where the child resided.[4] In 2005, the Legislature amended the statute to enlarge venue to include the two additional options currently in place: where a custodial respondent or named party abuser resides or where the abuse occurred.[5] As such, it is clear that the statute providing venue for the filing of abuse and neglect actions is a matter which has been given careful consideration by our Legislature and does not reflect merely an empty, technical formality. *Accord Riffle*, 195 W. Va. at 128, 464 S.E.2d at 770 ("[W]e expressly find that our venue statutes are carefully sculpted and are the product of a legislative process culminating with the 1986 revisions."). Accordingly, the DHHR cannot perform an "end-run" around the exclusive venue provisions of West Virginia

---

[4]This provision was formerly located at West Virginia Code 49-6-1(a) and provided: "If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or to the judge of such court in vacation." In 2015, Chapter 49 was reorganized, renumbered, and superseded; the pertinent provision now exists, as indicated, at West Virginia Code § 49-4-601(a).

[5] Now codified at West Virginia Code § 49-4-601(a).

5

Code § 49-4-601(a) by way of simple amendment. *W.Va. Secondary School Activities Comm'n v. Wagner*, 143 W.Va. 508, 520, 102 S.E.2d 901, 909 (1958) ("Venue designates the particular county in which a court having jurisdiction may, in the first instance, properly hear and determine a case.")

That is not to say, however, that situations which necessitate multiple petitions to comply with the venue statute must necessarily be heard separately. Importantly, Rule 4 of the Rules of Procedure for Child Abuse and Neglect provides for permissive transfer and consolidation of matters. Where venue necessitates that multiple petitions be filed in separate counties, where appropriate, Rule 4 may be utilized to cure any practical obstacles which may be presented by such piecemeal proceedings.[6] Without question, this Court appreciates the utility and preferability of management of proceedings involving multiple children and/or respondents by a singular court for purposes of efficiency and more complete consideration of the stability and safety issues implicated in abuse and neglect matters.

Certainly, in the overwhelming majority of cases, this is readily accomplished without running afoul of the venue statute. When such is not the case, such as in this highly unusual set of circumstances, the DHHR and the lower courts must be mindful of the statutory venue requirements, while conducting all due diligence to ensure that all necessary children and/or parties to abuse and neglect proceedings are joined and/or made subject of properly initiated proceedings. Accordingly, under the limited circumstances presented in this case, the Court finds that it was error to allow the DHHR to amend the initial petition to include the additional children, G.D. and D.D.; therefore, the adjudication as to those children is reversed and the matter is remanded with instructions to the circuit court to order the DHHR to file a new petition in a county where venue properly lies pursuant to West Virginia Code § 49-4-601(a).

With respect to D.W., however, the Court finds no error in regard to the circuit court's finding that petitioner abandoned D.W. and adjudication of petitioner as an abusing parent upon that basis. In support of this argument, petitioner asserts that she could not have been found to abandon the child simply because she failed to visit him for over nine years while he resided with his guardians. According to petitioner, her custody agreement with the child's guardians evidenced her desire to ensure that they would care for the child. The Court, however, does not agree. According to West Virginia Code § 49-1-201, "'[a]bandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." Petitioner does not dispute that she agreed to place the child in the guardians' custody, nor does she dispute that she had not visited the child in approximately nine years. While petitioner argues that she only intended for this to be a temporary arrangement as evidenced by the fact that she retained her parental rights and ability to regain custody at any time, the Court does not agree. The record shows that petitioner left the child with the guardians and failed to visit the child for approximately nine years. Throughout that time, the guardians were the sole providers of

---

[6]We note further that, unless a party timely raises the defense of venue, it may be waived. "Venue is not a jurisdictional question in the strict sense of the word, but rather, is a matter of personal privilege which may be waived by any party, including the State." Syl. Pt. 2, *Hansbarger v. Cook*, 177 W. Va. 152, 351 S.E.2d 65 (1986). Neither the DHHR nor the guardian argue that petitioner's venue argument has been waived.

parental duties and responsibilities for the child. Accordingly, the Court finds that petitioner's willful placement of the child into the guardians' custody clearly evidenced "conduct that demonstrate[d] the settled purpose to forego the duties and parental responsibilities to the child." While petitioner argues that she provided for the child's needs by securing his placement into the guardians' home, her argument ignores the fact that by placing the child in that home, she was specifically foregoing her parental responsibilities and duties in favor of the guardians providing the child with the same. For these reasons, the Court finds no error in the circuit court's finding that petitioner abandoned D.W. and adjudication of her as an abusing parent on that basis.[7]

For the foregoing reasons, we reverse the circuit court's August 24, 2016, order, as pertains to G.D. and D.D. and remand with instructions to the circuit court to order the DHHR to file a new petition in a county where venue properly lies pursuant to West Virginia Code § 49-4-601(a).  As to D.W., we find no error in the decision of the circuit court, and therefore that portion of its August 24, 2016, order is hereby affirmed.

Affirmed in part and reversed and remanded in part, with instructions.

**ISSUED**:  June 2, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[7]In light of affirm of the circuit court's adjudication of petitioner on the basis of abandonment of D.W., and in further view of our reversal of the adjudication as pertains to G.D. and D.D., we find it unnecessary to address petitioner's additional assertion that the circuit court erred in finding abuse as the result of her ongoing substance abuse.