**STATE OF WEST VIRGINIA**

*In re* **J.H.**

**FILED**
**November 12, 2025**
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**No. 24-410** (Wood County Case No. CC-54-2024-JA-64)

# MEMORANDUM DECISION

Petitioner Mother A.H.[1] appeals the Circuit Court of Wood County's June 26, 2024, order terminating her parental rights to J.H., arguing that Wood County was not the appropriate venue for this matter and that the circuit court erred in terminating her parental rights.[2] Upon consideration of the parties' written and oral arguments, the appendix record, and the applicable authorities, and finding no substantial question of law or prejudicial error, we determine that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In February 2024, the DHS filed a petition alleging that the petitioner abused and neglected J.H. after he was born drug affected. The DHS specifically alleged that the petitioner had continued to abuse illegal substances while pregnant after having a prior termination of parental rights to J.H.'s older sibling. According to the petition, the petitioner stipulated to abusing and neglecting J.H.'s older sibling in January 2023. Thereafter, the petitioner was offered services through family treatment court and a traditional post-adjudicatory improvement period, but she failed "to address and correct" any of her substance abuse issues. As a result of those failures, in June 2023, the circuit court terminated the petitioner's parental rights to J.H.'s older sibling.

On February 17, 2024, immediately prior to the filing of the instant petition and eight months after the petitioner's parental rights were terminated to J.H.'s older sibling, the petitioner was arrested in Wood County, West Virginia, and charged with one count of third offense shoplifting and one count of delivery of a controlled substance resulting in death.[3] She was taken

---

[1] The petitioner appears by counsel Eric K. Powell, on brief. Heather L. Starcher appeared at oral argument on behalf of the petitioner. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael D. Farnsworth, Jr., appears as J.H.'s guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] According to the status updates filed in this Court, the petitioner pled guilty to one count of delivery of a controlled substance resulting in death and she is currently incarcerated at the Lakin Correctional Center, with her next scheduled parole hearing in December 2027. The DHS and the guardian ad litem represent that the petitioner will discharge her sentence in September 2031.

into custody and transported to the North Central Regional Jail ("NCRJ") in Greenwood, Doddridge County, West Virginia. Upon arrival at the NCRJ, the petitioner was drug tested and found to be positive for amphetamines, buprenorphine, fentanyl, and THC. Three days after her arrest, on February 20, 2024, while still in the custody of the State of West Virginia, the petitioner gave birth to J.H. at the NCRJ. The petitioner and J.H. were then transported to United Hospital Center ("UHC") in Clarksburg, Harrison County, West Virginia. Upon her admission to UHC, the petitioner tested positive for controlled substances. Thereafter, due to respiratory issues "caused by the withdrawal due to drug exposure," J.H. was transported to Ruby Memorial Hospital, in Morgantown, Monongalia County, West Virginia. As J.H. was clinging to life in another county, the petitioner signed herself out of UHC and was returned to NCRJ. Accordingly, on February 27, 2024, the DHS filed the instant petition and proceeded to adjudication.

At the adjudicatory hearing in April 2024, the petitioner testified that she lived in Wood County until her arrest, that her parental rights were terminated to J.H.'s older sibling, and that since that prior termination, she continued to abuse drugs until her incarceration, doing nothing to ameliorate her addiction. Accordingly, the circuit court adjudicated the petitioner as an abusive and neglectful parent and J.H. as an abused and neglected child.

In June 2024, the circuit court held a dispositional hearing.[4] The petitioner was the only witness who testified and, at that time, she was still incarcerated awaiting trial on the charge of delivery of a controlled substance resulting in death. As to where she lived, the following question was asked of the petitioner by her counsel, "[a]nd are you a resident of Wood County?" The petitioner replied to this question, "[y]es." On the issue of her drug use, the petitioner testified that the only controlled substance she took during her incarceration was Subutex, a medication administered daily. The petitioner testified she had completed numerous life skills courses during her incarceration. Finally, the petitioner admitted that her parental rights to J.H.'s older sibling were terminated in June 2023, that she learned she was pregnant with J.H. in July 2023, and that she continued to use drugs during her entire pregnancy with J.H. On the record at the dispositional hearing, the circuit court noted that "[i]n that prior termination case the [petitioner] [m]other was granted the ability to participate in family treatment court and following her discharge from family treatment court she was granted a traditional improvement period and did nothing in either family treatment court or the traditional improvement period."

In the resulting dispositional order, the circuit court found that the petitioner's parental rights to J.H.'s older sibling were terminated in June 2023, that the petitioner discovered she was pregnant with J.H. in July 2023, "and [that] she did absolutely nothing to address her addiction, and continued using while she was pregnant resulting in [J.H.] being born drug affected and going

---

[4] There was a discussion on the record at the dispositional hearing that indicates the petitioner sought a post-dispositional improvement period. No written motion for such improvement period is in the appendix record or shown on the docket sheet included in the appendix record. West Virginia Code § 49-4-610(3) requires a motion for a post-dispositional improvement period to be in writing. Despite the lack of a written motion, the circuit court denied the petitioner's request for an improvement period for the same reasons cited in support of termination.

through withdrawals." The circuit court further found that J.H. was "being scheduled to see a neurologist to address seizures that are quite likely the result of [the petitioner's' drug] use while pregnant." Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Accordingly, the circuit court terminated the petitioner's parental rights to J.H. It is from this order that the petitioner appeals.[5]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred by adjudicating her and terminating her parental rights when the DHS failed to prove by clear and convincing evidence that Wood County, West Virginia was the proper venue for this abuse and neglect matter. We disagree. West Virginia Code § 49-4-601(a) provides:

> *Petitioner and venue.* - If the department or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts to the circuit court in the county in which the child resides, or if the petition is being brought by the department, in the county in which the custodial respondent or other named party abuser resides, or in which the abuse or neglect occurred, or to the judge of the court in vacation. Under no circumstance may a party file a petition in more than one county based on the same set of facts.

We find that the petitioner's argument fails for multiple reasons. First, she failed to raise any objection to venue during the entirety of the proceedings below. Further, the petitioner's own testimony established that she resided in Wood County. This Court has previously found that a party's failure to object to venue may result in the issue being waived on appeal:

> We have explained that " ' "[j]urisdiction deals with the power of the court, while venue deals with the place in which an action may be tried." Syllabus Point 7, *Lester v. Rose*, 147 W. Va. 575, 130 S.E.2d 80 (1963).' Syllabus Point 2, *Vanover v. Stonewall Casualty Co.*, 169 W. Va. 759, 289 S.E.2d 505 (1982)." *Hansbarger v. Cook*, 177 W. Va. 152, 157, 351 S.E.2d 65, 70 (1986). Furthermore, "[s]ubject matter jurisdiction cannot be conferred by consent or waiver, but venue may be." *Id.* We find that petitioner's failure to object to venue before responding to the merits of the pleading constitute waiver of this issue for appellate review. *See State v. Asbury*, 187 W. Va. 87, 91, 415 S.E.2d 891, 895 (1992) ("Generally the failure to object constitutes a waiver of the right to raise the matter on appeal.").

---

[5] All parental rights were terminated and the permanency plan for J.H. is adoption in his current placement.

*In re J.E.*, No. 14-0666, 2015 WL 1232024, at *3 (W. Va. Mar. 16, 2015) (memorandum decision). Our Rules of Procedure for Child Abuse and Neglect Proceedings provide that "service or contents of any answer filed [shall not] prevent a respondent from raising . . . by timely motion any issue formerly raised by special appearance or by a pleading filed before an answer." W. Va. R. P. Child Abuse & Neglect Proc. 17(b). Under this Rule, although the failure to file a motion to dismiss for lack of venue need not be filed prior to the filing of an answer to the petition, the petitioner was required to raise the issue before the circuit court by "timely motion." We find that by failing to raise the issue at all before the circuit court, the petitioner waived this issue for consideration on appeal.

Even if the petitioner did not waive this issue, the evidence adduced below demonstrated that venue was proper in Wood County. First, the petitioner was the "custodial respondent," and admitted – under examination by her counsel – that she resided in Wood County. Second, the petitioner further admitted that she took no controlled substances once she was arrested in Wood County and subsequently incarcerated at the NCRJ. This means that the abuse and neglect took place in Wood County prior to her incarceration. Thus, Wood County was both the "county . . . in which the custodial respondent . . . resides" and was the "county . . . in which the abuse or neglect occurred." W. Va. Code § 49-4-601(a). In either instance, venue was properly established in Wood County.

The petitioner further argues that the circuit court erred in terminating her parental rights because termination was not the least restrictive disposition, that she had taken courses while incarcerated and had made improvement which should have been considered by the circuit court, that the circuit court failed to find that termination of her parental rights was necessary for the welfare of J.H., and that the circuit court should not have terminated the petitioner's parental rights when paternity of the father had not been established.

In support of her argument that the circuit court erred by terminating her parental rights, the petitioner argues that there was a reasonable likelihood that she could substantially improve the conditions of abuse and neglect and that termination was not necessary for the children's welfare. The petitioner asserts that the classes she took while incarcerated demonstrate that "she may well have continued" improvement and, therefore, the circuit court erred in terminating her parental rights. We note that this is the petitioner's second abuse and neglect proceeding, the first of which resulted in the involuntary termination of her parental rights to J.H.'s older sibling based upon drug use and failing to make any improvement during that proceeding. During that prior abuse and neglect proceeding, the petitioner was granted the ability to participate in family treatment court and a traditional improvement period. As the circuit court found, she "did nothing in either family treatment court or the traditional improvement period." Further, the petitioner learned she was pregnant with J.H. a month after her prior termination, remained committed to abusing illegal drugs, and gave birth to a gravely ill and drug affected child. The circuit court specifically found that the petitioner "continued using [drugs] while she was pregnant resulting in [J.H.] being born drug affected and going through withdrawals." She plainly continued to engage in the same behavior after squandering multiple opportunities to improve. This Court has previously affirmed the termination of parental rights under similar circumstances, where: "[t]he record demonstrates that petitioner received extensive services prior to this abuse and neglect

proceeding and yet failed to implement any techniques taught, as evidenced by her giving birth to a second child affected by drugs." *In re J.H.-1*, No. 17-0781, 2018 WL 317377, at *3 (W. Va. Jan. 8, 2018) (memorandum decision). Further, circuit "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

We have further held that "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected" and when necessary for the welfare of the child. Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*); *see also* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon findings that there is no reasonable likelihood conditions of abuse or neglect can be substantially corrected in the near future and that termination is necessary for the children's welfare). There is no such reasonable likelihood when the parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help" W. Va. Code § 49-4-604(d). Further, the DHS was not required to make reasonable efforts to preserve the family because the petitioner's parental rights "to another child ha[d] been terminated involuntarily." W. Va. Code § 49-4-604(c)(7)(C). Thus, the circuit court did not err in finding that there was no reasonable likelihood the conditions of abuse and neglect could have been substantially corrected, and the DHS had no obligation to make reasonable efforts to preserve the family.

The petitioner next argues that the circuit court failed to make any findings that the termination of her parental rights was necessary for the welfare of J.H., in contravention of West Virginia Code § 49-4-604(c)(6) ("Upon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and, when necessary for the welfare of the child, terminate the parental . . . rights of the abusing parent."). While it is true that the circuit court did not recite the statutory standard "necessary for the welfare of the child," verbatim, either at the hearing or in its order, both the record of the dispositional hearing and the circuit court's final order contain sufficient findings to establish this prong of West Virginia Code § 49-4-604(c)(6). As such, we find there to be no basis for reversing the lower court's findings. Specifically, the factual findings made by the circuit court in its order clearly support both its conclusion that there is no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect and the conclusion that termination was necessary for the welfare of J.H.

While we have vacated and remanded dispositional orders for failure to observe the process established in the Rule of Procedure for Child Abuse and Neglect Proceedings and related statutes, in this case, the process was neither substantially disregarded nor frustrated by the circuit court's omission of the words "termination was necessary for the welfare of" J.H. *See* Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001). Although that language is not in the circuit court's order, its factual findings made during the dispositional hearing and in the

dispositional order provide ample support for the conclusion that termination of the petitioner's parental rights was necessary for J.H.'s welfare.[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 26, 2024 order is hereby affirmed.

Affirmed.

**ISSUED**:       November 12, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

---

[6] The petitioner's skeletal argument that termination was improper because "it was not known whether the child might ultimately be placed with the father or when and whether termination of the [p]etitioner's parental rights was necessary for an adoption or other permanent placement," is wholly unsupported by citations to the appendix record and bereft of any authority. As we have recently said:

> Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Critically, this Rule also provides that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." *Id.* As we have previously stated, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim .... Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). In that this assignment of error presents a skeletal argument that is nothing more than a mere assertion, petitioner has not preserved the claim on appeal, and we will not address it further.

*In re M.F.*, No. 22-0213, 2022 WL 4355492, at *2 n.3 (W. Va. Sept. 20, 2022) (memorandum decision).